LEAVY, Circuit Judge:
 

 On July 9, 1985, Lily M. Okamoto (Oka-moto) filed an application in the district court for payment for services rendered to a bankrupt estate. THC Financial Corporation (THCF). The trustee filed an opposition. After discovery, the district court granted the trustee’s motion for summary judgment.
 

 FACTS
 

 In early 1977, THCF, a large Hawaiian industrial loan company, filed for bankruptcy under Chapter X of the Bankruptcy Act of 1898, 11 U.S.C. §§ 501-676 (1970) (repealed 1978). The district court approved a reorganization plan to liquidate THCF’s assets and to pay its depositors. One asset was a $700,000 note receivable from LR & I Development One (LR & I). The note was secured by a mortgage on some real estate known as Pulama Gardens in Kahal-uu on the Island of Oahu. LR & I was in receivorship and had defaulted on the note.
 

 With court approval, THCF foreclosed the mortgage and purchased Pulama Gardens at a commissioner’s sale in February of 1983. THCF planned to develop Pulama Gardens to improve its value.
 

 Okamoto, who is an attorney, claims that THCF’s trustee, J. Carl Osborne, and its general counsel, Tamotsu Tanaka, hired her over a four-year period from April, 1981 to April, 1985, to perform lobbying and consulting services in connection with the proposed Pulama Gardens development. She describes ten different assignments Osborne and/or Tanaka allegedly asked her to perform during the four years. She claims she lobbied the State of Hawaii, the City of Honolulu, and a citizen’s group to attempt to obtain financing, funds for sewerage facilities, extensions of building permit deadlines, and residential or urban fringe zoning for the proposed development, a low-income family housing project. She monitored city proposals to impose controls that would have adversely affected the proposed development. Oka-moto also introduced Chung Dho Ahn (Ahn), president of First West Engineers, Inc. (First West) to Osborne. Ahn signed a conditional option for First West to purchase Pulama Gardens, providing all approvals necessary to finance and build the housing project were obtained. The option was not exercised because the conditions were not met.
 

 Okamoto requested a total of $113,114.50 for her services when she applied to the district court for an order approving payment. In his motion for summary judgment, the trustee claimed that Okamoto (1) was not hired in the capacity she claimed; (2) had not obtained court approval for her services as required by law; and (3) did not benefit the estate to justify an award of fees. On appeal, the trustee contends that Okamoto has been compensated adequately for her services, because she received $28,-000 to compensate her for services when THCF foreclosed the mortgage on Pulama Gardens in 1983, and she would have received $30,000 by court order if First West had exercised its option to purchase Pula-ma Gardens.
 

 Okamoto claims the district court erred in concluding that prior court approval is required under the bankruptcy laws for the services she performed. She claims that as a lobbyist, she is exempt from the requirement of prior court approval. She also contends that genuine issues of material fact preclude an award of summary judgment.
 

 STANDARD OF REVIEW
 

 This court reviews a district court’s grant of summary judgment de novo.
 
 T. W. Elec. Serv., Inc. v. Pacific Elec. Con
 
 
 *391
 

 tractors Ass’n,
 
 809 F.2d 626, 629 (9th Cir.1987).
 

 DISCUSSION
 

 1.
 
 Whether Okamoto’s Employment Required Prior Court Approval Under the Bankruptcy Rules
 

 In 1977, when THCF filed its petition under Chapter X of the Bankruptcy Act of 1898, Bankruptcy Rule of Procedure 215 governed a bankrupt estate’s hiring of attorneys and accountants.
 
 See
 
 Bankr.R.P. 10-206(a) (1977) (extending rule 215 to Chapter X cases). Rule 215 states, in part:
 

 (a)
 
 Conditions of Employment of Attorney and Accountants.
 
 No attorney or accountant for the trustee or receiver shall be employed except upon order of the court. The order shall be made only upon application of the trustee or receiver, stating the specific facts showing the necessity for such employment, the name of the attorney or accountant, the reasons for his selection, the professional services he is to render, and to the best of the applicant’s knowledge all of the attorney’s or accountant’s connections with the bankrupt, the creditors or any other party in interest, and their respective attorneys and accountants.
 

 In 1978, the Bankruptcy Act of 1898 was replaced by the Bankruptcy Reform Act of 1978. Title 11 U.S.C. (1979). Rule 215 was replaced by 11 U.S.C. § 327 which took effect on November 6, 1978. Act of November 6, 1978, Pub.L. No. 95-598, § 402(d), 92 Stat. 2682,
 
 reprinted in
 
 Title 11 U.S.C. at 1-2 (1979). However, the Bankruptcy Reform Act was not made retroactive from that date. Consequently, rule 215 applies to this case.
 

 Okamoto admits she did not have court approval for the services she rendered to THCF. She argues that rule 215 does not apply to lobbying and consulting services, which she claims characterize her services to THCF. We disagree. Courts have expanded rule 215 and its precursors to require professions other than those specified to obtain prior court approval for services rendered to a bankrupt estate. Rule 215 was expanded to include architects.
 
 In re Holiday Mart, Inc.,
 
 18 B.R. 212 (Bankr.D.Haw.1982). General Order 45, 11 U.S.C. following section 53 (1943), a precursor to rule 215, required court orders for the employment of auctioneers, accountants, and appraisers in bankruptcy proceedings. The courts expanded it to include real estate brokers.
 
 In re Grim,
 
 35 F.Supp. 15, 17 (E.D.Pa.1940). In
 
 Grim,
 
 the court explained why General Order 45 should be extended: “[N]o reason appears why private real estate brokers should constitute a more favored class. The policy of law underlying General Order 45 would seem equally applicable to the circumstances existing in the present case.”
 
 Id.
 
 at 17. That policy which
 
 Grim
 
 extended allowed creditors of a bankrupt to have notice of the employment of a real estate broker and his claim for a commission, because such notice might affect their approval of the sale of the bankrupt’s asset.
 
 Id.
 

 Because the creditors of THCF also are entitled to notice that a lobbyist was hired to develop a THCF asset, we agree with the district court that under rule 215, lobbyists, like real estate brokers, must obtain court approval of their employment. Creditors are entitled to notice of those services because they affect how the asset is handled, and may require substantial compensation.
 

 The record before us also establishes that Okamoto may have held herself out as an attorney despite claims to this court that her activities were limited to lobbying and consulting services. On her legal stationery, she wrote a letter dated July 15, 1983, to two Hawaii state legislators:
 

 “As you are aware, I represent J. Carl Osborne, Trustee of the THC Financial, the owner of [Pulama Gardens] in his effort to sell [it].
 

 In this capacity, I have had general discussions with the head of the Development Division of the Hawaii Housing Authority, to determine the feasibility of building gap group housing....”
 

 Okamoto cannot disclaim her professional status before this court while claiming it elsewhere to surmount the requirement of
 
 *392
 
 rule 215. Moreover, we agree with the district court that because Okamoto is an attorney, rule 215 applies to her whether or not she performed traditional legal services.
 

 Okamoto cites two cases,
 
 Committee of Asbestos-Related, Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.),
 
 60 B.R. 612 (Bankr.S.D.N.Y.1986) and
 
 In re Seatrain Lines, Inc.,
 
 13 B.R. 980 (Bankr.S.D.N.Y.1981) for the proposition that she need not have court approval as a lobbyist. However, both
 
 Manville
 
 and
 
 Seatrain
 
 arose under the Bankruptcy Reform Act of 1978. They are not applicable to this case. 2.
 
 Whether Okamoto Qualifies for a Fee Award Despite the Bankruptcy Rules
 

 In this circuit, a retroactive award of fees for services rendered without court approval is not necessarily barred.
 
 Cohen v. U.S. (In re Laurent Watch Co.),
 
 539 F.2d 1231, 1232 (9th Cir.1976). A court may exercise its discretion to award fees for valuable but unauthorized services.
 
 Matter of Triangle Chemicals, Inc.,
 
 697 F.2d 1280, 1287-88 (5th Cir.1983);
 
 Stolkin v. Nachman,
 
 472 F.2d 222, 226-27 (7th Cir.1973).
 

 The district court concluded correctly that such awards should be limited to exceptional circumstances where an applicant can show both a satisfactory explanation for the failure to receive prior judicial approval and that he or she has benefited the bankrupt estate in some significant manner.
 
 See Triangle Chemicals,
 
 697 F.2d at 1289 (all requiring a benefit to the estate);
 
 In re Twinton Properties Partnership,
 
 27 B.R. 817, 819-20 (Bankr.M.D.Tenn.1983) (using these criteria among others to justify a retroactive award);
 
 In re Orchid Island Hotels, Inc.,
 
 18 B.R. 926, 933 (Bankr.D.Haw.1982); and
 
 Holiday Mart,
 
 18 B.R. at 216.
 

 Okamoto fails to meet these requirements. Her efforts did not benefit the estate. Pulama Gardens appeared about to be sold for a considerable loss at the time the district court denied her application. She does not explain satisfactorily her failure to obtain prior court approval. She did not contact the trustee requesting payment until January, 1985, when her services were completed. She appeared to be satisfied with court-approved and other contingency payment arrangements until the contingencies were not met. She applied for fees totaling $113,114.50 only after she knew she would not receive a $30,-000 contingency fee.
 

 3.
 
 Whether Genuine Issues of Material Fact Remain
 

 Summary judgment is appropriate if the pleadings and supporting materials “show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c).
 

 No genuine issues of material fact remain to preclude summary judgment in favor of the trustee. It is undisputed that Okamoto did not receive prior court approval for the services she rendered to THCF. No facts demonstrate that her services benefited the estate to justify an award of fees. None of the contentions in Okamo-to’s brief rise to the level of a genuine issue as to any material fact.
 

 CONCLUSION
 

 Upon de novo review, the district court’s grant of summary judgment in favor of the trustee is affirmed.