**In re David G. LEE and Susan C. Lee.**

**Bankruptcy No. 91–26113–A–11.**
**Mto. No. DM–2.**

United States Bankruptcy Court,
E.D. California.

Oct. 5, 1992.

Bardwil & Dahl by Robert S. Bardwil and Wendy Dezzani, Sacramento, Cal., for Sp. Counsel, Gary B. Mitchell.

Law Offices of Daniel R. Walsh by Jon M. Yaple, Carson City, Nev., for creditors, James K. Neff and Harry Lee.

## MEMORANDUM OPINION AND DECISION

LOREN S. DAHL, Chief Judge.

### FACTS

The debtors David G. Lee and Susan C. Lee filed a chapter 11 petition on August 9, 1991 and have remained in possession. In their amended schedules, they listed their interest as plaintiffs in a state court lawsuit as an asset of the estate.

On August 10, 1992 pursuant to a motion brought by the debtors for approval of compromise and settlement, this court signed an order approving the settlement of the state court lawsuit. The court, however, reserved ruling on that part of the motion which requests the payment of attorney's fees and costs for special counsel for the debtors, Gary B. Mitchell, Esq. The parties were given an opportunity to submit further evidence and written argument on the attorney's fees issue and the hearing on the payment of fees was continued. The evidence and briefs having been filed and the matter argued, the court issues this memorandum opinion and decision.

It is undisputed that this court did not authorize the employment of Mitchell as special counsel to the debtors until June 11, 1992, after the state court lawsuit had been

settled. The order authorizing his employment provided,

IT IS ORDERED that the Debtors be and are hereby authorized to retain GARY B. MITCHELL, ESQ., as special counsel to represent the Debtors' interest in that certain Sutter County Superior Court action, entitled *David G. Lee v. John Marta, et al.*, Case No. 39291, and all fees requested will be subject to approval of the Bankruptcy Judge and no compensation shall be paid except upon Court Order following Application pursuant to 11 U.S.C. Section 330(a).[1]

The settlement will result in the payment of $510,000 to the estate. Of that amount, the debtors seek to reimburse Mitchell for his costs in the amount of $11,659.21 and to pay him $164,446.93 or 33⅓ percent of the net recovery based upon their prepetition contingent fee agreement with him.

Creditors James K. Neff and Harry Lee oppose the payment of contingent fees to Mitchell on the grounds that this court never approved the agreement. Moreover, Neff and Lee argue that Mitchell's explanation of his time spent and services performed contained in his declaration filed with the court on August 11, 1992 is too broad and general. Thus, they conclude that Mitchell's explanation is insufficient to support an award of attorney's fees based upon a lodestar calculation.

## DISCUSSION

### I. Retroactive Award of Fees—the THC Financial Test

It is a fundamental bankruptcy precept that court approval of the employment of counsel for a debtor in possession or a trustee is a prerequisite to counsel getting paid. *In re Shirley*, 134 B.R. 940 (Bankr. 9th Cir.1992). The failure to receive prior court approval for the employment of a professional in accordance with 11 U.S.C. sec. 327 and Fed.R.Bankr.P. 2014 precludes the payment of fees. *Id.*

In the Ninth Circuit, however, authority does exist for a bankruptcy court to grant a retroactive award of fees. In *In re THC Financial Corp.*, 837 F.2d 389, 392 (9th Cir.1988), the court held that a retroactive award of fees for services rendered without court approval is not necessarily barred. Such awards should be limited to exceptional circumstances where the applicant can show both a satisfactory explanation for the failure to receive prior court approval and that the applicant has benefitted the estate in some significant manner. *Id.* Mere negligence is insufficient to establish the requisite exceptional circumstances. *In re Emco Enterprises, Inc.* 94 B.R. 184, 187 (Bankr.E.D.Cal.1988).

### A. Satisfactory explanation

Turning to the instant facts, Mitchell states in his uncontroverted declaration that David Lee hired him prepetition in April 1990 on a contingent fee basis to represent him in a state court lawsuit. The lawsuit previously had been commenced by a succession of two attorneys who refused to handle the case except upon an hourly basis. Mitchell continues that he was unaware of the chapter 11 filing until late March 1992 and, thereafter, contacted the debtors' bankruptcy counsel. According to Mitchell, debtors' bankruptcy counsel then proceeded to draft and circulate for signature the application which would secure Mitchell's employment and Mitchell's declaration in support.

Mitchell states that on the evening of May 7, 1992 while preparing for a deposition, he learned of some startling evidence which would greatly enhance the opportunity for a favorable settlement in his client's favor. He presented the facts to the defendants at the deposition on the morning of May 8, 1992 and later that afternoon the parties reached a tentative oral settlement agreement.

Mitchell also telephoned debtors' bankruptcy counsel later that day and they both agreed that this opportunity for settlement

---

1. The court struck from this order prepared by the attorney for the debtors the reference to 11 U.S.C. sec. 328.

should not be foregone merely because Mitchell's employment had yet to be approved by the bankruptcy court. Mitchell received the settlement proceeds on May 22, 1992, and the final written agreement was signed by the debtor on May 29, 1992.

Mitchell has also filed the declaration of debtors' bankruptcy counsel with this court. In his declaration which is also uncontroverted, debtors' bankruptcy counsel states that he was not aware that the debtors were actively prosecuting their state court lawsuit until early April 1992.

Debtors' bankruptcy counsel confirms that due to necessary revisions and a mail mix-up, it took nearly two (2) months, from April 8 through May 31, 1992, for the application for employment and supporting declaration to be circulated for signature for presentation to the court.

Besides the declarations of Mitchell and debtors' bankruptcy counsel, the declaration of the debtor, David Lee, also was filed with the court. He states that he did not tell Mitchell about his bankruptcy filing until late March 1992.

■ After reviewing the uncontroverted declarations, the court finds that the first prong of the *THC Financial* case is met. Mitchell has shown a satisfactory explanation for the failure to receive prior court approval of his employment. Several factors convince the court.

First, the court believes Mitchell when he states that he did not learn about the debtors' bankruptcy until late March 1992. There is nothing in the record or in the case file to suggest that Mitchell would have known about the bankruptcy sooner. Nothing indicates that the state court lawsuit and the debtors' financial problems which culminated in the bankruptcy filing were somehow connected so that Mitchell could or should have known about the bankruptcy. The debtor was the plaintiff in the state court lawsuit, and, unlike a defendant who may seek bankruptcy relief for the protection of the automatic stay, there would be no reason for Mitchell, as plaintiff's counsel, to investigate whether his client had filed or would be a candidate for bankruptcy.

Second, once having learned about the bankruptcy, Mitchell contacted debtors' bankruptcy counsel who then rightly assumed the responsibility of obtaining court approval for Mitchell's employment. At that point, Mitchell had done everything possible to protect himself. Mitchell was not the one in control of the task of preparing and submitting the declaration and application for employment to the court. Short of making inquiry of debtors' bankruptcy counsel as to when the court would sign the order, Mitchell had no influence over the almost two (2) month delay before the application was presented to the court for approval.

Third, the court notes that the lawsuit was listed on amended schedule B filed on October 22, 1991 as an item of personal property. On that schedule prepared by debtors' bankruptcy counsel, the debtors were claiming damages in the amount of $300,000 although the debtors' interest in the lawsuit is listed as unknown. Debtors' bankruptcy counsel states that he was unaware that the debtors were actively pursuing this lawsuit. As an attorney representing chapter 11 debtors, however, it was incumbent upon him to inquire about *all* of the details pertaining to the case, especially when the damages sought were sizeable.

Further inquiry makes sense because such a lawsuit could be a possible funding source for the chapter 11 plan which soon would have to be formulated. A denial of fees in this case would be tantamount to penalizing Mitchell for the oversight of debtors' bankruptcy counsel. This outcome would be unfair.

### B. Significant benefit

The second prong of the *THC Financial* test requires a showing of significant benefit to the estate. This showing has been met. Mitchell agreed to handle a case which previously had been handled by two other attorneys without success. He took a case where the debtors estimated their damages in excess of $300,000 and he obtained a settlement for $510,000. The settlement has resulted in what could be the

primary source of payment to creditors under the plan.

## II. The Disclosure Issue

█ The objecting creditors also argue that attorney's fees should be denied because of defective disclosure surrounding Mitchell's appointment as special counsel on June 11, 1992. They argue that once having entered into the tentative oral settlement agreement on May 8, 1992, Mitchell should have disclosed this event in his application for employment and his declaration. This argument is unpersuasive.

The court would have approved Mitchell's employment as special counsel even if he had disclosed in his declaration and the application that the case tentatively had settled. In short, if such a disclosure had been made the court envisions that it would not have hesitated to approve Mitchell's employment. A denial of his application for employment in the court's view could have upset the settlement.

The court notes that the written fee agreement entered into between Mitchell and the debtors prepetition is attached to Mitchell's declaration in support of his application for employment. The written fee agreement, disclosed to this court although never approved, revealed that Mitchell was rendering services to the debtor without having been authorized previously to do so. This disclosure would not have influenced whether Mitchell should be authorized to represent the debtors. Instead, it would be a factor to be considered down the road if and when Mitchell applied for attorney's fees based upon the number of hours he worked. *See In re Sinor*, 87 B.R. 620 (Bankr.E.D.Cal.1988).

Mitchell states that he relied upon debtors' bankruptcy counsel to prepare the application and as an attorney who does not practice bankruptcy law, it did not occur to him that the application and his declaration needed revision. He continues that in any event he was uncertain when the application actually had been submitted to the court. Based upon 30 years in the private practice of law before sitting on the bench, the court can well understand and believes

Mitchell's statement that he did not view the oral agreement as a final settlement by any means.

The court disagrees with the objecting creditors' contention that Mitchell has been less than candid with the court. Instead, the fact that Mitchell, at the behest of debtors' bankruptcy counsel, amended his declaration in support of employment to reveal that he previously had represented the Lees in another, unrelated case indicates that Mitchell made every effort to make a complete disclosure.

## III. The Measure of Fees

Once having concluded that Mitchell clears the *THC Financial* hurdle, the next question is what amount should he receive and how should his fee award be calculated?

█ Mitchell argues that his fees should be calculated using a contingent fee formula. The court intends to award Mitchell's fees on a contingent fee basis, however, not for the reason urged by Mitchell.

Citing 11 U.S.C. sec. 328(a), Mitchell argues that contingent fees should be allowed because the court approved his employment on a contingent fee basis. Mitchell is incorrect. As noted above, the order approving Mitchell's employment, provided that his fees would be calculated pursuant to 11 U.S.C. sec. 330(a). This court struck the reference to 11 U.S.C. sec. 328(a).

█ Although the court did not initially approve the contingent fee agreement, the court may still award fees based upon this calculation. Two recent cases support this conclusion.

In *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.*, 924 F.2d 955 (9th Cir.1991), counsel for the creditors' committee, filed a fifth fee application in which he requested $21,465 in fees and $1,099.34 in costs. His fees were calculated according to the lodestar and the majority of the fees were incurred for work performed on the committee's objection to $120,000 in attorney's fees paid to a secured creditor pursuant to 11 U.S.C. sec. 506(b). After the bankruptcy court took

the attorney's fees application under advisement, the court ordered the secured creditor to disgorge $18,517.90 in fees. Two months later, the bankruptcy court awarded counsel for the creditors' committee $6,172.63 for his work related to the fee objection. This amount represented one-third of the fees which the court ordered the secured creditor to disgorge. The district court affirmed. Counsel for the committee then appealed to the Ninth Circuit and argued that his fees should have been calculated on an hourly basis as were his prior fee applications.

The Ninth Circuit rejected the argument and affirmed. The court noted that the order approving the employment of the attorney did not guarantee a particular fee arrangement. 924 F.2d at 960. The court also held that 11 U.S.C. sec. 328 did not apply because that section only applies where the court previously has approved a fee agreement and, then, later seeks to change it. *Id.* Finally, the court stated that where there is no prior approval of a fee arrangement, the court may review the application under 11 U.S.C. sec. 330.

Reaffirming *In re Yermakov,* 718 F.2d 1465, 1471 (9th Cir.1988), the court stated

Although *Manoa* [*In re Manoa Finance Company,* 853 F.2d 687 (9th Cir.1988) ] suggests that starting with the "lodestar" is customary, it does not mandate such an approach in all cases. Moreover, *In re Yermakov* states that calculating the "lodestar" is the "primary" method for calculating fees; "primary" is not a synonym for "exclusive." (citation omitted).

The Ninth Circuit concluded that where the fee application submitted by counsel is not sufficiently detailed, contains entries which are lumped together, and is such that a court cannot "quantify to numerical precision ... the lodestar calculation," the court does not abuse its discretion in applying a different formula. 924 F.2d at 960.

*Puget Sound Plywood* was cited with approval recently in *In re Kitchen Factors,* 143 B.R. 560 (9th Cir. BAP 1992). In *Kitchen Factors* the court affirmed the bankruptcy court's award of attorney's fees for special counsel for the debtor calculated on a contingent fee basis rather than the lodestar method. The court noted that the most relevant factor in determining that fees should be awarded on a contingent fee basis was the small amount which could have been recovered for the estate.

■ Both *Puget Sound Plywood* and the *Kitchen Factors* case support an award of fees to Mitchell based upon a contingent fee basis. This court has not previously approved terms and conditions of Mitchell's employment. As such, the court may apply a lodestar calculation or, if appropriate, a contingent fee method for calculating fees. Mitchell outlines the services he performed in his declaration and estimates that he spent a total of 1,016 hours on the case. He also states that during the relevant time period his hourly billing rate ranged from $175 to $200 per hour. Thus calculated, Mitchell's fees based upon the lodestar would range from $177,800 to $203,200. As in *Puget Sound Plywood* and *Kitchen Factors,* calculating Mitchell's fees using the contingent fee method would be more economical for the estate.

Yet another factor convinces the court that Mitchell's fees should be calculated on a contingent fee basis. The services set forth by Mitchell in his declaration and the amount of time spent are not set forth in accordance with Fed.R.Bankr.P. 2016(a). The statement is not a detailed statement but rather a general estimate obviously prepared in hindsight of the services which he believes were performed and the time which he spent. Even if his estimate is accurate, such a fee application appears to be precisely the type referred to in the *Puget Sound Plywood* case which would support a calculation of fees based upon a contingent basis rather than the lodestar.

## CONCLUSION

Mitchell acted in the best interests of his client when he entered into the oral settlement of the case despite knowing that his employment had not yet been approved by the court. This case is a rare example where a professional can prove that the

exceptional circumstances doctrine set forth in the *THC Financial* case has been met. This case is not one of defective disclosure.

The court will approve a retroactive award of fees in this case and such award shall be calculated on a contingent fee basis. Mitchell is also entitled to be reimbursed for his costs.

This Memorandum Opinion and Decision shall constitute findings of fact and conclusions of law. Counsel for Mitchell shall prepare and submit an appropriate order.