24 F.3d 247
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 In re Carla JERREL, aka Carla Shoulders, Debtor.
Carla JERREL, Appellant/Cross-Appellee,
v.
Craig D. MARTINSON, Trustee, Appellee/Cross-Appellant,
First Bank, N.A., et al., Appellees.
 Nos. 92-36925, 92-36930.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 16, 1993.*
Decided May 5, 1994.
 
 Before: GOODWIN, CANBY, and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Chapter 7 debtor Carla Jerrel appeals the district court's affirmance of the bankruptcy court's order in which that court: (1) determined that most of her $55,000 settlement of a negligence action against Fisher Construction is not exempt property under Montana's Workers' Compensation Act (the Act); and (2) rejected her attorney's application for attorney's fees with regard to the Fisher settlement. Bankruptcy Trustee Craig Martinson ("Trustee") cross-appeals the district court's affirmance of the bankruptcy court's determination that a portion of the settlement proceeds representing medical expenses is exempt property. We AFFIRM on the appeal and REVERSE on the cross-appeal.
 
 BACKGROUND
 
 3
 The facts giving rise to this appeal are not in dispute. Carla Jerrel was injured within the scope of her employment at Deaconess Medical Center in Billings, Montana. She received benefits under the Act. In addition, she pursued a third-party negligence action against Fisher Construction as permitted by section 37-71-412 of the Act. This claim remained unresolved when Jerrel filed for a Chapter 13 bankruptcy.
 
 
 4
 Jerrel's Chapter 13 bankruptcy schedules did not include the unresolved negligence claim against Fisher. Only after settlement of the negligence action did Jerrel amend her bankruptcy schedule to include the $55,000.00 settlement proceeds. At the same time, she claimed the proceeds as exempt property under the Act.
 
 
 5
 Jerrel later converted her Chapter 13 bankruptcy to Chapter 7. The Chapter 7 Trustee objected to Jerrel's claim that the Fisher settlement proceeds were exempt property. After a hearing, the bankruptcy court ruled that: (1) the bulk of the proceeds are not exempt under Montana's exemption scheme and are therefore part of the bankruptcy estate;[1] and (2) Jerrel's attorney was not entitled to any fees for his work in relation to the Fisher settlement.
 
 I.
 
 6
 Jerrel argues that the Trustee's objection to the claimed exemption was untimely and that the settlement proceeds therefore are conclusively exempt. See 11 U.S.C. Sec. 522(i); Bankr.R. 4003(6). We decline to address this issue because Jerrel failed to raise it in the district court.
 
 
 7
 Although we have discretion to consider issues raised for the first time on appeal, our general rule is that we will not do so. Romain v. Shear, 799 F.2d 1416, 1419 (9th Cir.1986). Jerrel points out that we sometimes deviate from this rule when, because of a change in the law, an issue arises while appeal is pending. Id. Jerrel's contends that the Supreme Court's decision in Taylor v. Freeland & Kronz, 112 S.Ct. 1644 (1992), makes the recognized exception to our general rule applicable to her appeal. It does not.
 
 
 8
 First, Taylor was not decided while this appeal was pending; it was decided nearly seven months before the district court order that is the subject of this appeal.[2] Moreover, Taylor does not represent a change in the law with regard to the timeliness of the objection in this case. In Taylor, the Court affirmed the court of appeals holding that a bankruptcy court cannot decide to consider an untimely objection to an exemption claim simply because the exemption claim is not supported by law. 112 S.Ct. at 1647. Otherwise, the time limit of Rule 4003(b) becomes a nullity. The bankruptcy court in this case did not decide to hear an untimely objection because the claim had no basis in law; indeed, the alleged untimeliness of the claim was never brought to the attention of the bankruptcy court. The Supreme Court's holding in Taylor therefore has absolutely no bearing on the timeliness issue raised by Jerrel and does not represent a change in the law that has provided Jerrel with new grounds for relief. Accordingly, we decline to exercise our discretion to consider the issue.
 
 II.
 
 9
 Jerrel next contends that the district court erred in its determination that the settlement proceeds are not exempt property under the Act. We disagree.
 
 
 10
 Section 522 of the Bankruptcy Code allows a debtor to exempt certain assets from distribution as part of the bankruptcy estate. The Code also allows states to opt out of the federal exemptions, providing instead for state exemptions. Montana has opted out of the federal exemptions. Mont.Code Ann. Sec. 31-2-106. Montana's exemption statute incorporates by reference the exemption provisions of Montana's Workers' Compensation Act. Id. (exempting property exempt from execution of judgment as provided in Mont.Code Ann. Sec. 39-71-743). Section 39-71-743 provides that "[n]o payments under this chapter shall be assignable, subject to attachment or garnishment or be held liable in any way for debts," with a few enumerated exceptions, none of which are implicated in this case.
 
 
 11
 Thus, for the settlement proceeds to be exempt, they must constitute a "payment" under the Act. We agree with the courts below that section 39-71-743 exempts only benefits paid through workers' compensation sources, not damages received through a common law tort action against a third party.
 
 
 12
 Jerrel unjustifiably relies on the case of State ex rel. Harry v. District Court, 628 P.2d 657 (Mont.1981), for the proposition that the Act's absolutely exempts certain funds from creditor claims of all sorts. In Harry, the Montana Supreme Court decided whether funds acknowledged to be within the exemption were subject to a certain type of claim. 628 P.2d at 658-59 (holding that a workers' compensation settlement payable from the state workers' compensation division, was not subject to a court order that the proceeds be used to pay court-appointed counsel). We, on the other hand, are called upon to decide whether these settlement funds fall within the exception at all. Harry is unhelpful in making this determination.
 
 
 13
 The fact that the Act retains an injured worker's right to bring negligence actions against third parties, Mont.Code Ann. Sec. 39-71-412, does not change the nature of those claims to something other than common law tort claims. Proceeds received as a result of those claims do not become "payments" within the meaning of section 39-71-743 by virtue of being mentioned in the Act's provisions. Indeed, the section retaining the common law action provides that the injured worker's right to maintain the action is "in addition to the right to receive compensation under this chapter") (emphasis added).
 
 
 14
 We also reject Jerrel's argument that, because the Act constitutes an employee's exclusive remedy for injuries suffered in the scope of employment, Mont.Code Ann. Sec. 39-71-411, the third-party tort recovery must be a "payment" under the Act. As the heading of that section makes clear,[3] the exclusive remedy provision is designed to limit the rights of the injured employee vis-a-vis the employer, not rights' against negligent third parties.
 
 
 15
 We similarly are not persuaded that the Act's determination of reimbursement rights for employers and compensation insurers in the event an injured worker recovers damages from a third party, Mont.Code Ann. Sec. 39-71-414, necessitates a conclusion that the recovery is a "payment" under the Act. Determining the rights to a source of funds does nothing to alter the nature of that source--here, a common law tort recovery.
 
 
 16
 Finally, we reject Jerrel's contention that her claim of exemption is supported by Hall v. State Compensation Ins. Fund, 708 P.2d 234 (Mont.1985), which held that subrogation rights do not apply when an injured worker has not been made whole. Not only is Hall factually distinguishable and legally inapposite,[4] its central holding was overruled in Zacher v. American Ins. Co., 794 P.2d 335 (Mont.1990). See Francetich v. State Compensation Mut. Ins. Co., 827 P.2d 1279, 1284-85 (Mont.1992) (recognizing overruling).
 
 
 17
 We also reject Jerrel's final argument based on Hall. Jerrel contends that because Hall recognized that the Montana Workers' Compensation Court has jurisdiction to determine subrogation rights, the third party recovery must be a payment under the Act. The Montana Supreme Court has recognized that the jurisdiction of the Workers' Compensation Court extends to subrogation determinations "and other matters that go beyond the minimum determination of the benefits payable to an employee." Kelleher Law Office v. State Comp. Ins. Fund, 691 P.2d 823 (Mont.1984). Contrary to Jerrel's assertion, this statement clearly indicates that a determination of subrogation rights is not a determination of rights to benefits payable under the workers' compensation act.
 
 
 18
 Having rejected Jerrel's strained arguments, we adopt the district court's more straightforward application of the Act. Section 39-71-743 exempts only benefits paid through compensation sources.
 
 III.
 
 19
 Jerrel argues that the district court erred in affirming the bankruptcy court's refusal to grant Jerrel's attorney attorney's fees in connection with the Fisher settlement. Essentially, she contends that it is unfair that her attorney receive no fees in connection with the settlement when the estate arguably has profited from his efforts in procuring the settlement. The Trustee responds that the fee request, presented to the bankruptcy court along with the settlement as a fait accompli, constitutes an end-run around procedural safeguards designed to protect the estate from liability for unauthorized professional services. We decline to disturb the district court's determination on this issue.
 
 
 20
 Sections 327 to 329 of the Bankruptcy Code concern the retention of professionals providing services for the estate. 11 U.S.C. Secs. 327-29. These provisions clearly are designed to ensure that the Bankruptcy Court carefully oversee such arrangements to prevent dilution of the estate's assets.[5] Thus, the court must approve the employment of any professional rendering service to the estate and a professional so employed must not hold or represent any interest adverse to the estate. 11 U.S.C. Sec. 327(a). Jerrel's attorney admits that he never sought the court's approval to represent the estate.
 
 
 21
 Jerrel is correct that this circuit allows a bankruptcy court to award retroactive fees for services rendered without court approval. See In re THC Financial Corp., 837 F.2d 389, 392 (9th Cir.1988). The court should exercise this discretion to award fees, however, only in "exceptional circumstances where the applicant can show both a satisfactory explanation for the failure to receive prior judicial approval and that he or she has benefited the bankrupt estate in some significant manner." Id. (emphasis added) (upholding district court refusal to award retroactive fees); see also In re Kroeger Properties, 57 B.R. 821 (9th Cir. BAP 1986) ("In the Ninth Circuit, Bankruptcy Courts have power to issue retroactive orders authorizing employment in very limited circumstances.").
 
 
 22
 Although the bankruptcy court's approval of the Fisher settlement might indicate that Jerrel's attorney's services were beneficial to the estate, Jerrel has not shown that her attorney provided a satisfactory explanation for his failure to seek judicial appointment. Jerrel's attorney in the Fisher settlement also was her counsel in the bankruptcy proceedings. Surely he was aware of those proceedings. His candid admission that he incorrectly failed to list the Fisher claim on the Chapter 13 bankruptcy schedules prior to its settlement does not constitute a satisfactory explanation for his failure to seek appointment. We affirm the denial of attorney's fees.[6]
 
 IV.
 
 23
 The Trustee argues in his cross-appeal that the bankruptcy court erred in granting a partial exemption for $18,318.49 of the Fisher settlement proceeds that represented medical expenses. We reverse the district court's affirmance of the bankruptcy court's grant of the exemption because the statutory requirements for exemption have not been met.
 
 
 24
 The Bankruptcy Court relied upon section 25-13-608(1)(e) of the Montana exemption statute which provides an exemption for benefits received for medical expenses "to the extent they are used or will be used for the care." Mont.Code Ann. Sec. 25-13-608(1)(e).[7] The Bankruptcy Court made no mention of this limitation in its order affirming the partial exemption. The court, relied upon an inapposite case for the proposition that "[t]he language of section 25-13-608(1)(e) specifically states that [medical benefits] are exempt without limitation." Bankruptcy Court Order dated Feb 20, 1992 at 5 (citing In re Edwards, 8 Mont.B.R. 126 (1990)). Edwards considered the issue whether the exemption was broad enough to apply to insurance benefits. The court's statement that the exemption is available "without limitation," thus refers to the source of the benefits to which the exemption can apply. The statement does not, indeed cannot, remove the requirement that benefits only are exempt if used for medical expenses.
 
 
 25
 Because it appears from the papers below that the funds to which the court applied the exemption are not to be used for medical expenses, they are not exempt. Although the bankruptcy court's exact method of calculation eludes us, it is clear that the compensation insurer had paid $40,874.14 in benefits to Jerrel. Bankruptcy Court Order at 9. Because the insurer had not participated in prosecuting the action against Fisher, the insurer held subrogation rights to only 50% of this amount. Id.; see Mont.Code Ann. Sec. 39-71-414(1). Although these funds are not to be used to pay medical expenses and certainly were not used to pay medical expenses prior to their receipt (the expenses had been paid by the insurer), the Bankruptcy Court has converted these separate funds into exempt property for Jerrel solely on the basis of the insurer's failure to protect its subrogation rights. The result is a windfall to Jerrel. This windfall is not exempt under the Montana exemption statute.
 
 
 26
 The principle that the Montana exemption statutes are to be liberally construed in favor of the debtor does not allow us to disregard the plain meaning of the statute. See MacDonald v. Mercill, 714 P.2d 132, 135 (Mont.1986). Moreover, our conclusion is consistent with the Montana Supreme Court's view of the balance struck in the Montana exemption statute:
 
 
 27
 The purpose of the exemption statutes is to attempt to strike a balance between the debtor's need to maintain a livelihood through rehabilitation while doing as little damage as possible to the creditor's ability to collect money.... The exemptions should not exceed the means necessary for the support and rehabilitation of the debtor and his dependents. To do so would create a windfall for the debtor and deny creditors payments to which they are entitled.
 
 
 28
 Brenton v. Estate of Sandvig, 819 P.2d 184, 185 (Mont.1991) (citations omitted).
 
 SUMMARY
 
 29
 We decline to rule on the timeliness of Trustee's objection to Jerrel's claimed exemption of the settlement proceeds. We AFFIRM the determination that the proceeds are not exempt under Montana's exemption scheme. We also AFFIRM the denial of an award of retroactive attorney's fees to Jerrel's attorney. We REVERSE the grant of a partial exemption for that portion of the settlement representing medical expenses. Costs in favor of appellee/cross-appellant.
 
 
 30
 No. 92-36925 AFFIRMED.
 
 
 31
 No. 92-36960 REVERSED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The court did exempt $18,318.49 of the settlement proceeds representing medical expenses. This amount was subject to the insurer's reimbursement claim of $6,100.00. The settlement funds included in the estate were subject to a further reimbursement claim of $14,337.00
 
 
 [2]
 Taylor was decided on April 21, 1992. The district court order now on appeal was issued November 10, 1992
 
 
 [3]
 Section 39-71-411 is headed: "Provisions of chapter exclusive remedy--nonliability of insured employer."
 
 
 [4]
 In Hall, an injured employee had a negligence action against a third party that was stipulated to be worth $40,000.00, yet had to settle the action for $25,000.00, the third party's insurance policy limit. The injured worker had received less than $15,000.00 (the difference between the stipulated value of his claim and the amount recovered from the third party) in workers' compensation benefits. The court held that, in these circumstances, the compensation insurer had no subrogation rights in the recovery from the third party
 
 
 [5]
 For example, the court must inquire into the reasonableness of the terms and conditions of employment and "may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. Sec. 328(a). The court also can disallow compensation of a professional who at any time during his or her employment is not a disinterested person or represents or holds an interest adverse to the interest of the estate. 11 U.S.C. Sec. 328(c)
 
 
 [6]
 Jerrel's reliance upon Montana's recognition of an attorney's lien in Kelleher Law Office v. State Comp. Ins. Fund, 691 P.2d 823 (Mont.1984) is misplaced. There, the court held that the state compensation insurance fund could be held liable for an attorney's lien that attached to payments under the Act when the recipient of the payments absconded with the attorney's share of a workers' compensation settlement. There was no bankruptcy and therefore no issue of court appointment to be decided
 In re Eisenstein, 9 Mont.B.R. 499 (1991), also relied upon by Jerrel is more on point, yet not decisive of the issue. In Eisenstein, the bankruptcy court determined that an injured worker's disability benefits, normally exempt from the claims of creditors, were not exempt from the worker's attorney's lien that had attached to the funds. Id. at 8-9 ("A claimant in a worker's compensation case cannot utilize Section 39-71-743 [or the general disability benefits exemption] to defeat an attorney's lien."). Here, however, the Bankruptcy Court has not held that an exemption statute prevents Jerrel's attorney from receiving fees--what prevents his fee award from the bankruptcy estate in this case is his failure to comply with the provisions of the Bankruptcy Code. Moreover, because the action against Fisher belonged to the bankruptcy estate, not Jerrel, the refusal to award fees to Jerrel's attorney does not violate Eisenstein's rationale that "exemption statutes are not designed to prevent persons from entering into agreements or giving liens with regard to their property or their causes of action." Id. at 9. Indeed, Jerrel's attorney's mistake was that he did not enter into an agreement with the holder of the cause of action (the estate).
 
 
 [7]
 This exemption is borrowed from the Uniform Exemption Act. See In re Edwards, 8 Mont.B.R. 126 (Bankr.Mont.1990); Bankruptcy Court Order, Blue Brief attachment 1 at 5-6. Comment 4 to the corresponding section of the Uniform Exemptions Act states: "If the cost of the care is otherwise defrayed, there is no justification for exempting the benefits provided for this purpose from creditors' claims." Unif.Exemptions Act Sec. 5 comment 4, 13 Unif.Laws Ann. 223 (1986)