66 F.3d 335
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re HOTEL CONQUISTADOR, INC., Debtor.
HOTEL CONQUISTADOR, INC., Appellant/Cross-Appellee,
v.
Harold P. GEWERTER, Esq., Ltd. Appellee/Cross-Appellant.
 Nos. 94-15097, 94-15237.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 15, 1995.
Decided Sept. 8, 1995.
 
 1
 Before: D.W. NELSON and T.G. NELSON, Circuit Judges, and KING,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Chapter 11 debtor Hotel Conquistador, Inc. ("HCI") appeals the district court's order affirming the bankruptcy court's order appointing Harold P. Gewerter, Esq., Ltd. ("Gewerter") counsel for HCI nunc pro tunc and awarding Gewerter attorneys' fees and costs pursuant to that appointment. Gewerter attorneys' fees and costs pursuant to that appointment. Gewerter cross appeals the district court's order affirming the bankruptcy court's order reducing his fees. We have jurisdiction pursuant to 28 U.S.C. Sec. 158(d) and affirm in part and reverse in part.
 
 I.
 
 4
 In December 1983, Hotel Conquistador, Inc. ("HCI"), Deil O. Gustafson ("Gustafson") and other parties filed suit in Nevada state court against Ramada Inns, Inc. ("Ramada") and other defendants seeking damages stemming from the sale of the Plaintiffs' interest in the Tropicana Hotel Casino to Ramada (the "Ramada litigation"). The Plaintiffs were initially represented by law firms in Los Angeles and Las Vegas.
 
 
 5
 HCI filed a Chapter 11 bankruptcy petition on September 24, 1984. The law firms of Weiner, Waldman & Gordon from Las Vegas and Coopers, Coopers, Von Feldt and Salmon from Minnesota applied for and obtained court approval to represent HCI in October 1984. At some point in 1986, Gewerter entered into discussions with Gustafson and another HCI principal, Edward Doumani, regarding representing HCI and the other plaintiffs in the Ramada litigation and representing HCI in the bankruptcy proceedings. The Ramada litigation was the principal asset of HCI at the time.
 
 
 6
 Gewerter entered an appearance in the bankruptcy case by filing an opposition to a motion to dismiss on January 29, 1987. He did not, however, apply to the bankruptcy court at this time for appointment as HCI's counsel. He first appeared on behalf of the plaintiffs in the Ramada litigation on March 24, 1987.
 
 
 7
 Gewerter filed a Chapter 11 plan with the bankruptcy court in July 1987. The plan indicated that Gewerter, Ltd. was to receive 15% of the gross proceeds of the Ramada litigation, if any, plus costs. In November 1987, HCI, Gustafson and Doumani executed a written fee agreement, drafted by Gewerter, which provided for a 15% contingency fee based on the proceeds of the Ramada litigation. At trial in the instant matter, Gustafson testified that the written fee agreement did not represent the true fee agreement, but was signed based upon Gewerter's representation that he would thereafter make a formal fee application to the bankruptcy court in which he would agree to a "sliding scale" fee. The bankruptcy court, however, concluded that the signed fee agreement represented the actual agreement between the parties.
 
 
 8
 On July 26, 1988, the bankruptcy court entered an order confirming the second amended plan of reorganization submitted by Gewerter on behalf of HCI (the "Confirmed Plan"). The Ramada litigation went to trial in May 1989 and resulted in a verdict in favor of the plaintiffs for $29 million. The Nevada Supreme Court dismissed Ramada's appeal, and the total amount eventually paid by Ramada, including interest, came to approximately $34 million. All of HCI's creditors were paid pursuant to the Confirmed Plan, although for some creditors this meant receiving 50 cents on the dollar.
 
 
 9
 Upon the disbursement of the proceeds of the Ramada litigation in August 1990, Gewerter, Ltd. received $5,141,665.66, the 15% fee less a reduction of $10,600 previously agreed upon by the parties.
 
 
 10
 HCI, joined by Gustafson and Doumani, HCI's only shareholders, thereafter sought to challenge Gewerter's fee by noting to the bankruptcy court that Gewerter had never formally applied to be appointed as counsel for HCI. Gewerter thereafter filed a petition with the bankruptcy court to be appointed counsel nunc pro tunc as well as an application for allowance of first and final attorneys' fees.
 
 
 11
 The matter was tried to the bankruptcy court, the Hon. Clive Jones, presiding. Following trial, the court granted Gewerter's nunc pro tunc application but ordered him to disgorge $200,000 of his fee for "bad acts" and to pay HCI's attorneys' fees and costs in connection with the application. HCI appealed to the district court and Gewerter filed a cross appeal. The district court affirmed the bankruptcy court's appointment of Gewerter as counsel nunc pro tunc and its award of fees. The district court reversed the bankruptcy court's order awarding HCI attorneys' fees and costs incurred in connection with Gewerter's application[1] and remanded for further findings with respect to the bankruptcy court's decision to impose liability for the $200,000 on Gewerter personally, as well as on Gewerter, Ltd. The district court entered judgment on its order on January 3, 1994. The Case is before this court on HCI's timely appeal and Gewerter's cross appeal.
 
 II.
 
 12
 Section 330 of the Bankruptcy Code permits an attorney or other professional person to receive reasonable compensation for services rendered to the bankrupt estate pursuant to 11 U.S.C. Sec. 327. Both section 327 and Bankruptcy Rule 2014 generally require approval of the bankruptcy court before an attorney can enter the employ of the estate. In Matter of Laurent Watch Co., Inc., 539 F.2d 1231 (9th Cir.1976), this court found that under the Bankruptcy Act, a bankruptcy court had the power to issue a nunc pro tunc order of appointment for an attorney. The bankruptcy appellate panel in In re Kroeger Properties & Development, Inc., 57 B.R. 821 (Bankr. 9th Cir.1986) concluded that bankruptcy courts retained this power with the enactment of the Bankruptcy Code.
 
 
 13
 To justify a request for appointment nunc pro tunc, counsel must "show both a satisfactory explanation for the failure to receive prior judicial approval and that he or she has benefitted the bankrupt estate in some significant way." Okamoto v. THC Financial Corp., 837 F.2d 389, 392 (9th Cir.1988).
 
 
 14
 In the instant case, there is little if any real dispute but that Gewerter's successful prosecution of the Ramada litigation benefitted the bankrupt estate. Gewerter's explanation for his failure to seek prior court approval of his employment is that he was under a "good faith belief" that because notice of Gewerter's fee agreement was contained in the Confirmed Plan submitted to the court, the necessary approval had, in fact, been obtained.
 
 
 15
 For its part, HCI argues that Gewerter knew or should have known of the requirement for court approval of his employment. It points out that Gewerter reviewed the HCI bankruptcy file and thus should have been aware of the procedures used by HCI's prior attorneys to obtain court approval for their employment. HCI also notes that Gewerter filed a petition for employment in an unrelated bankruptcy proceeding months before applying for the nunc pro tunc order in the instant case.
 
 
 16
 This court agrees with the district court and the bankruptcy court that Gewerter offered a satisfactory explanation for his failure to seek the bankruptcy court's prior approval for his appointment as counsel. Moreover, this court notes, as did the district court, that because HCI's creditors have already been paid under the terms of the Confirmed Plan, the only beneficiaries of any order compelling Gewerter to disgorge his fee would be HCI's principals, Doumani and Gustafson, the very individuals who agreed to Gewerter's fee arrangement on behalf of HCI in the first place. Equity does not favor such a result. Accordingly, this court finds that the bankruptcy court did not abuse its discretion in granting Gewerter's application for appointment nunc pro tunc.
 
 III.
 
 17
 The bankruptcy court apparently received ex parte a report, labeled by the parties as the "Sullivan Report," that supposedly detailed questionable acts by various parties to the bankruptcy proceedings, including the appellant, its principals, and the appellee herein. HCI contends that a perception of possible bias arose upon the bankruptcy court's review of the report and that the court thus should have recused itself.
 
 
 18
 The bankruptcy court indicated on the record that it did not take the report into account or rely on it in any way in reaching its decision. The court did, however, indicate that it would turn the report over to the U.S. Attorney's Office and to state bar authorities.
 
 
 19
 Against the bankruptcy court's declaration, HCI points to nothing in the record that might lead to a conclusion that the court's impartiality might reasonably be questioned. HCI identifies no expression of bias against it, subtle or otherwise, in the record. Nor does it indicate how review of the report resulted in the court gaining personal knowledge of disputed evidentiary facts concerning the bankruptcy proceeding. The bankruptcy court did not abuse its discretion in failing to recuse itself in the instant case.
 
 IV.
 
 20
 In his cross appeal, Gewerter contests the bankruptcy court's reduction of his fee by $200,000 for certain "bad acts," arguing that the reduction constituted a fine or sanction imposed without reference to any applicable authority. Gewerter contends that the bankruptcy court's findings that he committed certain "bad acts" was based solely on the "Sullivan Report," which was not properly before the court, and thus said findings were clearly erroneous. In fact, the bankruptcy court did not point specifically to anything in the Sullivan Report. It did note Gewerter's failure to make a timely application for appointment as counsel, his admitted inexperience in bankruptcy matters, and certain potential conflicts of interest--all matters appearing in the record.
 
 
 21
 In this court's opinion, however, the matters referred to by the bankruptcy court do not rise to the level of "bad acts" such as would justify a reduction in Gewerter's fee. Accordingly, the bankruptcy court's order that Gewerter disgorge $200,000 is REVERSED. This court thus need not address Gewerter's contention on appeal that the bankruptcy court erred in imposing liability on Harold P. Gewerter, personally, for the $200,000.
 
 V.
 
 22
 The judgment of the district court is AFFIRMED as to the bankruptcy court's order granting Gewerter's application for appointment as counsel nunc pro tunc and the award of fees and REVERSED as to the bankruptcy court's findings of "bad acts" by Gewerter and its order reducing Gewerter's fee.
 
 
 23
 Costs are awarded to Appellee/Cross-Appellant.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 HCI does not appeal from the district court's holding in this regard