bankruptcy case best left to states to determine).

### IV.

In sum, Maryland's motion to strike defendants' motion to pay proceeds to it are denied. Adversary defendants' motion to dismiss or transfer is granted to the extent that this court will exercise the discretion given it in 28 U.S.C. § 1334(c)(1) to abstain. The court does so on the basis that the proceeding is a state cause of action, resolution of which will not affect the EEI estate in any direct manner. Therefore, this court finds that it is in the interest of justice and comity that this court abstain from such proceeding.

Counsel for the adversary defendants is to draft an order in accordance with this opinion within five (5) days.

IT IS SO ORDERED.

In the Matter of **FREEHOLD MUSIC CENTER, INC.,** Freehold Music Center Studios, Inc.—Bricktown, and **J. Michael Diehl,** Debtors.

**Bankruptcy No. 84–00539.**

United States Bankruptcy Court,
D. New Jersey.

May 16, 1985.

Markowitz & Zindler, by Nola R. Bencze, Lawrenceville, N.J., for debtors.

Wilentz, Goldman & Spitzer, by Richard M. Meth, Woodbridge, N.J., for Boff, Shapiro, Weisman & Golden.

Department of Justice, Office of the United States Trustee by Gregory Cuzzolino, Newark, N.J.

WILLIAM H. GINDIN, Bankruptcy Judge.

This matter arises from the application of Lawrence F. Boff, CPA, of the firm of Boff, Weisman, Shapiro & Golden, for the award of counsel fees *nunc pro tunc* for the performance of various accounting services. The facts are undisputed and the

sole issue for determination is whether or not this Court has the power to authorize the hiring of the said accountants pursuant to the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, 327, 327(a), 701 *et seq.*, 1101 *et seq.*, and 1107(a).

Three separate voluntary petitions under Chapter 11 of the Bankruptcy Code were filed by the debtors in the instant matter. Freehold Music Center, Inc., filed its petition on February 3, 1984; Freehold Music Center Studios, Inc.-Bricktown filed its petition on April 5, 1984 and the third petition was filed by J. Michael Diehl on May 14, 1984. At the time of the filings, it was the intention of the debtors to retain the services of the above-named accountants in order to perform general accounting services for all three entities; including the preparation of federal and state income tax returns for the year 1983.

On March 22, 1984, the president of the corporate debtors requested the accountants to provide the necessary accounting services. The accountant met with the attorneys for the debtors in order to discuss the nature of such services. The attorneys advised the accountants that there were certain internal problems in the Bankruptcy Court and that an order authorizing the retention of accountants pursuant to 11 U.S.C. § 1107 and 11 U.S.C. § 327 might be delayed. Mr. Boff specifically requested "protection" before work would be commenced. He was thereupon advised that the appropriate application would be prepared and submitted to the Court. Additional arrangements were made to ensure payment to the accountant at the appropriate time and subject to the appropriate approval.

Throughout the entire course of the proceedings, the services of an accounting firm were essential to the continuation of the debtors' business. During the second week of July, 1984, the accountants became aware that Court approval would be necessary for payment, but in good faith, *believed* that authorization for their work had been obtained or had been properly arranged.

On August 28, 1984, the accountants learned for the first time that they had not been retained pursuant to Court order and that such Court order was necessary before payment could be made. On that date, the accountants ceased work.

The accountants assert, and no evidence to the contrary has been presented, that they were not familiar with the details of the Code nor the rulings applicable which required retention before any reimbursement would be permitted. They further assert that had they been so informed, they would not have performed services without proper authorization.

After a dispute arose between the accountants and the attorneys for the debtors, on November 28, 1984, application was filed seeking to retain the accountants *nunc pro tunc.* It is that application which is presently before this Court.

█ This Court specifically finds the foregoing facts and furthermore finds on the basis of the affidavits submitted that the accountants proceeded in good faith and performed services which were in the best interests of the debtors. This Court further finds that the debtors' business could not be properly operated without the services of a qualified professional.

11 U.S.C. § 327 provides for the employment of *professional persons and specifically* permits the employment of accountants. Bankruptcy Rule 2014 governs the procedure to be used and provides in pertinent part in section (a):

An order approving the employment of ... accountants ... pursuant to § 327 of the Code shall be made only on application of the trustee ... stating the specific facts showing the necessity for the employment ...

Bankr.R. 2014(a).

It should be noted, of course, that pursuant to 11 U.S.C. § 1107 a debtor-in-possession has all of the rights of a trustee with respect to such actions.

Initially, the issue of the *nunc pro tunc* employment of professional persons would appear to be one where there is disagree-

ment among the Circuits. In *In re Triangle Chemicals, Inc.*, 697 F.2d 1280 (5th Cir.1983), Circuit Judge Tate indicated that the Bankruptcy Court as a court of equity could consider the granting of approval *nunc pro tunc*. In his analysis of the problem, however, he pointed out the difference in the Circuits and particularly identified the Third Circuit as one wherein a strict "inflexible *per se* rule" was enforced. 697 F.2d at 1285. He relied upon a number of cases from this Circuit. In *In re Hydrocarbon Chemicals, Inc.*, 411 F.2d 203 (3d Cir.1969), Circuit Judge Ganey held that in Chapter X proceeding, General Order 44 in bankruptcy applied. That Order provided:

> No attorney for a receiver, trustee or debtor in possession shall be appointed except upon order of the court ...

General Order 44.

It should be pointed out that the emphasis in General Order 44 is on the negative condition precedent requiring the entry of an order. (*"no ... shall"*) In contrast, Rule 2014 is worded somewhat differently for it requires an application, but does not contain a blanket negative prohibition. (*"shall ... only"*) In the case of *In re National Tool & Mfg. Co.*, 209 F.2d 256 (3d Cir.1954), the Third Circuit dealt with General Order 44 and Chapter X as well.

Two other cases were relied upon by Judge Tate for his conclusions about the Third Circuit. *In re Robertson*, 4 F.2d 248 (3d Cir.1925) and *In re Calpa Products Co.*, 411 F.2d 1373 (3d Cir.1969). In both of these cases, actual attempts had been made to secure the appointment of the professional person and such applications had been either directly or indirectly refused.

Under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, two cases have arisen in Bankruptcy Courts in this Circuit. In both cases, Bankruptcy Judge William A. King, Jr. dealt with the problem. In *In re Lewis*, 30 B.R. 404 (Bankr.E.D.Pa.1983), Judge King relied upon *In re Hydrocarbon Chemicals Inc.*, *supra*, and *In re Calpa Products*, *supra*. However, with respect to that issue, he pointed out in *Lewis* "that

both ... [the applicant,] and the members of his firm are experienced practitioners in this field of law" and noted that he "did not file his application for approval of employment ... until after this Court had entered its show cause order." Furthermore, the action was taken over (20) months after the filing of the Chapter 11 petition. 30 B.R. 404, 405–6. It is clear from Judge King's ruling that the application was too little, too late and that the equity test required by Judge Tate in *Triangle Chemicals, supra*, was not met.

In 1984, Judge King issued an opinion in *In re Bible Deliverance Evangelistic Church*, 39 B.R. 768 (Bankr.E.D.Pa.1984). There, Judge King found an exception. He stated:

> Ordinarily, we adhere to the strict rule enunciated in *Lewis, supra*, against *nunc pro tunc* fee awards. However, we believe counsel has demonstrated the existence of exceptional circumstances ... [I]t was necessary to begin investigating the financial position of the debtor at once. Furthermore, counsel acted with reasonable promptness in filing its application for employment.

*Id.* at 772.

Thus, Judge King applied an equity test as suggested by Judge Tate in *Triangle Chemicals, supra*. The provisions of 11 U.S.C. § 105 go beyond a mere haven for bankruptcy judges when they are uncomfortable with a result. They encompass the broad range of equity powers which not only permit, but in fact require, a judge to view the matter before him by exercising his discretion. As Judge Tate stated:

> We thus find that neither bankruptcy statute nor rule preclude the bankruptcy judge in the exercise of its sound discretion, and as a court of equity administering equitable principles, from entering an order *nunc pro tunc* authorizing the employment of an attorney for the debtor in possession even after the attorney (who *should* have secured prior approval for his retainer) has performed valuable services for the debtor's estate that have

increased the common funds available for distribution to the creditors.

697 F.2d 1289.

Likewise, treatises in this area have also noted that "under certain circumstances ... courts have permitted the use of *nunc pro tunc* orders to validate a previous failure to obtain the requisite court approval and obviate an oversight which would otherwise result in unfair and inequitable circumstances." 2 *Collier on Bankruptcy*, ¶ 327.02 at p. 327–7, (15th ed. 1982).

The position of the accountants in the instant case is further made sympathetic by the fact that the error, if indeed there was one, was occasioned not by their own actions, but rather by the action of another whose failure was beyond their own control. At each stage, the accountants themselves conducted themselves appropriately.

 The rule which must be applied therefore is one in which the Court balances the equities and exercises its discretion. It must weigh the good faith of the professional in proceeding without an order and take into account the response to information that the order has not been entered. It must further determine the emergent need for the services rendered and whether or not the debtors could have functioned without such services. Other factors for consideration include a determination of whose responsibility it was to obtain authorization, the applicant's relationship with the debtors and his own sophistication in the field.

Applying these tests, the Court therefore concludes that the accountants are entitled to an order authorizing their employment *nunc pro tunc.*

Counsel for the debtors shall submit an appropriate order.