**In re Russel John LARSON, Gerald John Larson, d/b/a Larson Angus Ranch, a general partnership, Debtors.**

**Russel John LARSON, Gerald John Larson, d/b/a Larson Angus Ranch, Appellants,**

**v.**

**UNITED STATES TRUSTEE; Jerrold Nye; Richland Bank and Trust, Appellees.**

Bankruptcy No. 92–11051–12.

BAP No. MT–93–1767–RAsV.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 21, 1994.

Decided Dec. 1, 1994.

Reform Act of 1976, is the statute that applies in     this appeal.

Gary S. Deschenes, Great Falls, MT, for appellants Larson.

Jerrold L. Nye, Billings, MT, for appellee Jerrold L. Nye.

Before RUSSELL, ASHLAND and VOLINN, Bankruptcy Judges.

### OPINION

RUSSELL, Bankruptcy Judge:

The former counsel for the Chapter 12[1] debtors and debtors in possession filed his first and final fee application following his withdrawal as the debtors' counsel. The debtors objected to the fee application. Following a hearing on the fee application and objection, the bankruptcy court entered an order which awarded fees and costs to the debtors' former counsel. The debtors appeal. We AFFIRM.

### I. FACTS

One of the appellants/debtors, Russel Larson ("Larson"), consulted with the appellee, Jerrold L. Nye ("Nye"), a bankruptcy attorney, on the afternoon of Friday, July 3, 1992. The debtors' ranch was scheduled to be foreclosed upon by a secured creditor at 9:00 a.m. on Monday, July 6, 1992. At Larson's

request, Nye filed a Chapter 12 petition on July 3, 1992, which stopped the foreclosure. The petition was filed on behalf of Larson and his father Gerald J. Larson, d/b/a Larson Angus Ranch, a Montana general partnership (collectively, the "Larsons").[2]

Nye thereafter filed an application for employment as the Larsons' bankruptcy counsel. The bankruptcy court entered an order on July 14, 1992 appointing him as counsel. Nye represented the Larsons until January 12, 1993, when he withdrew as their counsel at their request.

On January 13, 1993, Nye filed a motion for allowance of administrative expense (the "fee application"), in which he sought payment of $5,245.60 in attorneys' fees and reimbursement of $1,403.94 in costs advanced, for a total of $6,649.54.[3]

In April, 1993, the Larsons filed an objection to the fee application. The objection complained about the quality of Nye's representation, the adequacy of the documentation filed in support of the fee application, and Nye's request for payment for services rendered by non-attorneys who had not been employed pursuant to a court order.

The bankruptcy court conducted a hearing on the fee application in May, 1993. The Larsons and Nye were represented by counsel at the hearing, and both Russel Larson and Nye testified and were cross-examined.

At the conclusion of the hearing, the bankruptcy court took the matter under advisement. The bankruptcy court subsequently issued an order which included findings of fact (the "fee award order"). The fee award order allowed payment of Nye's fees in full and reduced the requested costs by $904.96, for a total award of $5,751.58.[4] The Larsons timely filed their notice of appeal.

---

1. Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. Although it is not an issue before us on appeal, there appears to be some confusion as to the proper designation of the debtors' identities. The case caption reflects that the case was filed on behalf of Russel and Gerald Larson doing business as a partnership. Since a father and

son are not eligible to file a joint petition under § 302, we must assume that the bankruptcy court treated this case as a partnership bankruptcy.

3. The amount of fees requested in the fee application contained a $10 typographical error.

4. The fee award order contained a $7 discrepancy.

## II.  ISSUE

Whether the bankruptcy court abused its discretion when it awarded fees and costs to Nye.

## III.  STANDARD OF REVIEW

■■■ Compensation awards to professionals are made under the criteria set forth in § 330(a) and are generally reviewed for an abuse of discretion. *In re Stewart,* 157 B.R. 893, 895 (9th Cir. BAP 1993); *In re Financial Corp. of America,* 114 B.R. 221, 223 (9th Cir. BAP 1990), *aff'd,* 946 F.2d 689 (9th Cir.1991); *In re Nucorp Energy, Inc.,* 764 F.2d 655, 657 (9th Cir.1985). A trial court's findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. Fed.R.Bankr.P. 8013. *See also Anderson v. City of Bessemer City,* 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985).

## IV.  DISCUSSION

A.  *The record on appeal*

The failure of both parties to fully comply with the Federal Rules of Bankruptcy Procedure has hindered our efforts to substantively review this case. Fed.R.Bank.P. 8010(b) provides as follows:

**(b) Reproduction of Statutes, Rules, Regulations, or Similar Material.** If determination of the issues presented requires reference to the Code or other statutes, rules, regulations, or similar material, relevant parts thereof shall be reproduced in the brief or in an addendum or they may be supplied to the court in pamphlet form. Fed.R.Bank.P. 8010(b).

The Larsons' chief complaint consisted of the bankruptcy court's purported failure to abide by its own published decisions concerning compensation awards to professionals. In support of their argument, the Larsons cited eleven decisions published in the Montana Bankruptcy Reports; however, they failed to supply the panel with copies of those cases, only one of which was available to the panel in the Bankruptcy Reporter. The Larsons also failed to supply the panel with copies of any local rules of practice concerning compensation awards which may apply in the United States Bankruptcy Court for the District of Montana.

■■ Despite the failure to comply with Fed.R.Bankr.P. 8010(b), we are not precluded from deciding the appeal because of the absence from the record of the cases upon which the Larsons rely. They chose to omit the cases and the burden is on them, as appellants, to demonstrate that the bankruptcy court's findings of fact were clearly erroneous. *In re Gionis,* 170 B.R. 675, 680–81 (9th Cir. BAP 1994); *In re Burkhart,* 84 B.R. 658, 661 (9th Cir. BAP 1988); *In re Torrez,* 63 B.R. 751, 753 (9th Cir. BAP 1986), *aff'd,* 827 F.2d 1299 (9th Cir.1987).

B.  *The compensation award*

Section 330(a) authorizes the compensation of a debtor's counsel in a Chapter 12 case.[5] Section 330 is implemented by Fed.R.Bankr.P. 2014(a) as well as by the local rules of practice for the particular bankruptcy court from which approval of compensation is sought. Due to the parties' failure to supply the panel with any pertinent local rules of practice, we must determine the matter at hand without reference to any such local rules.

1.  *Nye's legal services on the Larsons' behalf*

The Larsons owned and operated a Montana cattle ranch. The assets of the bank-

---

5.  § 330.  **Compensation of officers.**

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

   (1) reasonable compensation for actual, necessary services rendered by such trustee, exam-

iner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

   (2) reimbursement for actual, necessary expenses.

ruptcy estate consisted primarily of the ranch real estate, farm machinery and equipment, and cattle. The main creditors of the estate were secured creditors holding liens against such assets, and various taxing authorities claiming liens arising from real and personal property taxes.

Russel Larson first consulted with Nye on the afternoon of Friday, July 3, 1992, and retained him to file the Chapter 12 bankruptcy petition in order to stop the foreclosure of the debtors' ranch scheduled for Monday, July 6, 1992. The Larsons paid Nye $200 to file the petition; they did not pay him any additional sums in connection with the bankruptcy case. Nye filed the petition on the afternoon of July 3, 1992.

On Tuesday, July 7, 1992, Nye conferred with Russel Larson by telephone and prepared a motion for use of cash collateral. The bankruptcy court granted the cash collateral motion following a hearing, and the Larsons thereafter were allowed the use of cash collateral in order to continue operating their ranch during the course of the bankruptcy case.

On July 7, 1992, Nye also prepared a motion for his appointment as the Larsons' counsel. That motion was executed by Nye on July 10, 1992, was served on the pertinent parties on July 13, 1992, and was submitted to the bankruptcy court for approval at or about that time. The bankruptcy court approved Nye's appointment on July 14, 1992.

At all times, Nye supervised a paralegal in his office in the preparation of a bankruptcy questionnaire and the Larsons' bankruptcy schedules and statement of affairs. He did not seek or obtain court appointment of the paralegal. He also obtained two appraisals, one by Phyllis Sethre ("Sethre") regarding the Larsons' real estate, and the other by Jack Tasker ("Tasker") regarding the Larsons' farm machinery and equipment. Nye did not seek or obtain court appointment of either appraiser.

Sethre charged $876.96 for her appraisal; this amount was included as a cost item on Nye's fee application. Tasker charged $325 for his appraisal; at Nye's request, the Larsons paid this amount directly to Tasker.

The cost of Tasker's appraisal was not included in Nye's fee application.

Nye formulated and filed a Chapter 12 repayment plan and two amended Chapter 12 plans on the Larsons' behalf. In connection with his formulation of the initial and amended plans, Nye negotiated the terms of loan modifications with representatives of the Larsons' major secured creditors, including Richland National Bank, the foreclosing secured creditor. He also negotiated with some of the Larsons' unsecured creditors to reduce the amounts owed by the Larsons.

Nye then began preliminary preparation for confirmation of the second amended Chapter 12 plan, which was scheduled for a hearing in mid-January, 1993. Upon being informed by the Larsons that his services were no longer desired, Nye immediately discontinued his preparation for the confirmation hearing.

### 2. *The fee application and objection*

Nye filed his fee application on January 13, 1993, together with supporting documentation in the form of time and cost entries detailing the services rendered and costs advanced. The Larsons filed their objection on April 19, 1993. Their objection specified the following alleged defects in the fee application: (a) failure to obtain appointment of professionals (the paralegal and the appraisers); (b) inadequate detail of the services allegedly rendered; and (c) improper representation of the Larsons, consisting of (i) Nye's purported failure to prepare a plan acceptable to creditors and capable of confirmation, which allegedly resulted in additional time being charged to the Larsons, and (ii) Nye's causing claims to be filed that otherwise would not have been filed, which in turn allegedly resulted in an increase in annual payments under the proposed plan.

The bankruptcy court conducted a hearing on the fee application and objection on May 12, 1993. At the hearing, the Larsons raised two additional objections, which were not included in their written objection: (a) improper billing for services rendered prior to court appointment as counsel; and (b) inappropriate "lumping" of services contained in the time entries attached to the fee applica-

tion. Both Russel Larson and Nye testified and were cross-examined concerning the details of the fee application. At the conclusion of the hearing, the bankruptcy court took the matter under advisement.

### 3. The fee award order

The bankruptcy court issued its fee award order on June 23, 1993. The order included the following findings of fact: (a) the services performed by Nye during the period prior to his appointment were allowable as an exception to the general rule disfavoring pre-appointment services, because the services were performed on an essentially emergency basis at the beginning of the case, application for employment was made promptly thereafter, the period of time in question was short, and the sum in question was small; (b) the billing statement provided sufficient detail for the court to make its fee award; and (c) the evidence did not substantiate the objections that Nye's legal services delayed plan confirmation or incurred unnecessary expense to the estate.

The bankruptcy court further disallowed Sethre's $876.96 appraisal fee based on Nye's failure to obtain court authorization for her employment pursuant to Fed.R.Bankr.P. 2014, and disallowed $28 in fax charges based on Nye's failure to explain the necessity for fax service charges in lieu of less expensive regular mail service charges.

The Larsons contend on appeal that the fee award order must be reversed in its entirety because it violated the bankruptcy court's own rules regarding fee applications, for the reasons stated in their written objection and the two additional reasons asserted at the hearing on the fee application. They raise for the first time on appeal the additional objection that the fee application failed to reflect the actual cost of photocopies.[6] We disagree, and address each of the objections below.

#### a. Billing for services rendered prior to appointment as counsel.

■■■ An award of attorneys' fees for services rendered without court approval is not necessarily barred in the Ninth Circuit. A court may exercise its discretion to award fees for beneficial, albeit unauthorized, services. *In re THC Financial Corp.,* 837 F.2d 389, 392 (9th Cir.1988). Such awards should be limited, however, to those circumstances where counsel can satisfactorily explain his or her failure to receive prior court approval and can also demonstrate significant benefit to the estate. *Id.* at 392. *See also In re Sirefco, Inc.,* 144 B.R. 495, 496 (Bankr. D.Mont.1992) (*de minimis* exception to general rule disfavoring retroactive fee awards exists where services are performed on essentially emergency basis, required application is made promptly thereafter, and only relatively short gap period and small sums are involved).

During the pre-appointment period in this case, Nye filed an emergency bankruptcy petition which stopped the foreclosure of the Larsons' ranch. He obtained authorization for the use of cash collateral for the continued operation of the ranch, and prepared and filed their bankruptcy schedules and statement of affairs. All of these services were performed on an essentially emergency basis and significantly benefitted the estate by preserving the estate's assets pending reorganization.

While there is some factual dispute regarding the precise date on which Nye filed his employment application with the court, there is no dispute that it was filed within the first two weeks of the case and that the order appointing Nye as the Larsons' counsel was entered on July 14, 1992, only eleven days after he first commenced services on their behalf.

Furthermore, the amount of fees incurred during the pre-appointment period was small. Of the $650.40 in question, $120.40

---

**6.** Nye contended during oral argument before the panel that the objections concerning pre-appointment services and "lumping" were also raised for the first time on appeal. He is correct that these two issues were not asserted in the Larsons' written objection. However, the Lar-

sons argued these objections at some length at the hearing on the fee application, which constitutes sufficient compliance with the requirement that an issue be raised in the proceedings below. Our consideration of these points is accordingly appropriate.

consisted of fees for paralegal services for preparation of the bankruptcy schedules and statement of affairs. Nye charged his services at the rate of $100 to $110 per hour (in 1992 and 1993, respectively). The services of Nye's paralegal were charged at the much lower rate of $40 per hour, and were utilized to reduce the cost to his clients for the performance of essentially routine tasks.

Given the emergency nature of the services performed during the pre-appointment period, the short time between commencement of services and court appointment, the small sum in question, and the benefit of the services to the estate, the bankruptcy court neither abused its discretion nor committed clear error in finding the objection regarding retroactive billing to be without merit.

b. *Failure to obtain appointment of professionals.*

■ (i) *Paralegal:* It is undisputed that Nye neither sought nor obtained court appointment of his paralegal. The Larsons acknowledged in their brief that paralegals are not considered professionals in Montana and cannot be appointed under § 327, and that they may be compensated under § 330 if it is shown that compensation is appropriate because the services are reasonable and provide a benefit to the estate. The Larsons' contention that Nye's paralegal cannot be compensated because she was not appointed by the bankruptcy court is illogical and contradicts their own argument on appeal.

Section 330(a)(1) provides that the court may award reasonable compensation to a debtor's attorney for services "rendered by . . . any *paraprofessional* persons employed by such . . . attorney." (Emphasis added.) As such, a paralegal is treated under the Bankruptcy Code as an employee of a debtor's counsel for compensation purposes, rather than as a professional whose appointment would be required under § 327.

Based upon our review of the record, we conclude that the services performed by Nye's paralegal were reasonable, cost effective and provided a benefit to the estate. The Bankruptcy Code authorizes the payment of reasonable compensation for services performed by paralegals. Accordingly, the objection concerning Nye's paralegal lacks merit and the bankruptcy court correctly declined to address this objection in the fee award order.

(ii) *Appraiser:* The Larsons complain that Nye never sought or obtained court approval of Tasker's appointment to appraise their machinery and equipment, or of their direct payment of $325 to him for the appraisal. However, the record reflects that this sum was not included in the fee application and was therefore not at issue in connection with the fee application. Furthermore, the Larsons failed to request an offset or reimbursement of this sum at any time during the bankruptcy proceedings. The bankruptcy court correctly declined to address this cost item in the fee award order as well.

c. *Inadequate detail of services performed, "lumping" of services and improper representation of the Larsons.*

Following its consideration of the billing statement, objections and testimony, the bankruptcy court found that the billing statement provided the court with sufficient detail to enable it to make a fee award, and that the objections concerning the quality of Nye's legal representation were not substantiated by the evidence.

■ As previously stated, we review a bankruptcy court's findings of fact for clear error. Fed.R.Bankr.P. 8013. Where two permissible views of the evidence exist, the fact finder's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985) (citing *United States v. Yellow Cab Co.,* 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949)). If a fact finder's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse the decision even if we were convinced that we would have weighed the evidence differently as the trier of fact. *Anderson,* 470 U.S. at 573–74, 105 S.Ct. at 1511–12.

■ Our review of the record in its entirety reveals that the bankruptcy court's account of the evidence was entirely plausible. While an alternative view of certain aspects of the evidence may exist, e.g., that

some of Nye's time entries may not have been particularly detailed and/or may have included a certain amount of "lumping" of services, the Supreme' Court in *Anderson* instructs that the bankruptcy court's choice between two such views cannot be clearly erroneous. Consequently, even if we were convinced that we would have reached a different outcome (which we are not), we are constrained from reversing the bankruptcy court because its findings of fact were not clearly erroneous. *Id.* at 574, 105 S.Ct. at 1511–12.

d. *Failure to show actual costs of photocopies.*

The Larsons failed to raise this objection at any time during the proceedings below. An appellate court will not consider an issue raised for the first time on appeal unless it falls within one of three exceptions to the general rule. *Bolker v. Commissioner,* 760 F.2d 1039, 1042 (9th Cir.1985) (exception allowed where (1) review is necessary in exceptional cases to prevent miscarriage of justice or preserve integrity of judicial process; (2) a new issue arises while appeal is pending due to change in law; or (3) issue presented is purely one of law and either does not depend on factual record developed below or pertinent record has been fully developed). As none of the recognized exceptions apply in this case, we decline to consider this objection since it is not properly before us.

## V. CONCLUSION

The bankruptcy court's findings of fact in its fee award order were not clearly erroneous and the bankruptcy court did not abuse its discretion in awarding attorneys' fees and costs to Nye as an expense of administration. Accordingly, we AFFIRM.