**In re Howard ATKINS; Romie Atkins, Debtors.**

**Howard ATKINS, dba Coyote Health Center, Appellant,**

v.

**WAIN, SAMUEL & CO., Appellee.**

**No. 94–15076.**

United States Court of Appeals, Ninth Circuit.

Submitted * July 11, 1995.

Decided Oct. 27, 1995.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir. R. 34–4.

Robert Bassell, San Francisco, California, for appellant.

Stephen Jan Meyers, San Francisco, California, for appellee.

Before: CHOY, CANBY and FERNANDEZ, Circuit Judges.

CHOY, Circuit Judge:

Former Chapter 11 debtors, Mr. & Mrs. Howard Atkins ("debtors"), appeal the decision of the Bankruptcy Appellate Panel ("BAP") affirming the bankruptcy court's *nunc pro tunc* order that both retroactively authorized services an accounting firm rendered to the estate on an emergency basis and awarded the firm fees for those services. Because we agree that exceptional circumstances existed to warrant the retroactive approval, we affirm the BAP's decision.

## I.

The debtors filed for a Chapter 11 reorganization on March 30, 1990. On May 21, 1991, the debtors' personal attorney, Mr. Robert Bassell, contacted Mr. Mark Setzen, a partner in the accounting firm of Wain, Samuel & Co. ("Wain, Samuel" or "the firm"), informing Setzen that the debtors urgently needed an experienced certified public accountant to assist their defense in an imminent trial with the Internal Revenue Service ("IRS"). The IRS was seeking approximately $200,000 from the debtors in unpaid taxes, interest and penalties, including penalties for civil fraud. Bassell informed Setzen that the debtors had to respond immediately to IRS interrogatories; if the debtors failed to respond in a timely fashion, the IRS would be entitled to summary judgment.

On May 29, 1991, Setzen and the firm's senior tax accountant, Mrs. Jean Gowan, met with Bassell and Mr. Atkins. The accountants agreed to review promptly the IRS interrogatories and work papers and immediately prepared an engagement letter for this work. Atkins signed the engagement letter the following day.

Setzen realized that the debtors needed an experienced tax lawyer and referred them to Mr. Marshall Whitley, whom the debtors subsequently hired. Wain, Samuel sifted through the debtors' financial records—a task Setzen characterized as "mammoth"— and quickly prepared and delivered draft interrogatory responses to Whitley by June 7, 1991. Whitley converted the draft into a formal response to the IRS. The firm charged the debtors $4,000 for their services through June 7, 1991, and the debtors paid this amount.

Then, in mid-June, Whitley asked Wain, Samuel to prepare more detailed and specific responses to the interrogatories. Wain, Samuel was to quantify any errors that the IRS had made during its audits. These responses were completed by the end of July. Also in July, Gowan and Setzen prepared for and attended a lengthy meeting with the U.S. Attorney regarding the tax litigation. At this meeting, the accountants learned that the IRS might be willing to concede some of

its claims on the basis of the information that Wain, Samuel had prepared and provided to the IRS. Eventually, the IRS reduced its claim to $85,000.

On July 3, 1991, Wain, Samuel sent the debtors a detailed invoice for previously unbilled June fees totalling $4,602.00. On August 2, 1991, Wain, Samuel sent another bill totalling $6,623.00 for services performed in July. Neither of these amounts was paid.

In August, Setzen assisted Whitley in preparing for upcoming depositions of key witnesses in the IRS litigation; Setzen prepared for and attended a lengthy meeting with Whitley to explain both the content and rationale of Wain, Samuel's interrogatory responses. For this work, Wain, Samuel billed another $2,350.00.

According to Mr. Setzen's sworn declaration, throughout the firm's representation, Wain, Samuel repeatedly raised the issue of its appointment with the debtors and their attorneys and was repeatedly told that the appointment would be made and that the firm would be paid. Finally, in November of 1991,[1] the firm decided to contact the debtors' bankruptcy attorney of record, Mr. Leon Bonney, to discuss the situation. On Bonney's request, the firm prepared letters confirming the payments it already received and services it had performed to date. Bassell informed the firm that he presented the letters to the debtors, but that they refused to sign. Even after this refusal, which was communicated months after the firm had performed the bulk of its services for the debtors, the debtors assured Setzen that the firm would be paid when the IRS matter was settled.

Between August 15, 1991 and early September, 1991, Wain, Samuel billed $318.00 for miscellaneous tax planning advice. In December of 1991, Wain, Samuel also billed $498.00 for discussions with the debtors' bankruptcy attorney, tax attorney and personal attorney regarding the preparation of the letters and collection of their fees.

Communication between the firm and the debtors broke down. When Wain, Samuel was served with a copy of the debtors' Disclosure Statement and Reorganization Plan, the firm retained counsel and prepared its motion for *nunc pro tunc* approval of its employment. The firm submitted its motion seeking *nunc pro tunc* authorization and request for payment of their administrative claim on August 28, 1992, approximately a year after it completed its work on the IRS litigation. Wain, Samuel attached to the motion a declaration executed by Mr. Setzen. Setzen declared that the firm did not file its motion closer in time to its completion of work on the emergency project because it was not aware of the status of the debtors' Chapter 11 case and did not know whether the debtors would be able to propose a Disclosure Statement and Reorganization Plan.

On or about October 16, 1992, the bankruptcy court found the debtors to be solvent and dismissed the Chapter 11 case. All of the creditors were paid in full.

Before the bankruptcy court, the debtors, *in propria persona*, opposed the accounting firm's application for retroactive approval, arguing that they had only retained Wain, Samuel for the limited purpose of assisting in drafting the interrogatory responses and that any subsequent services were unauthorized. The debtors admitted that the firm was hired on an emergency basis, but that it was paid for the emergency services it rendered. They claimed that Bassell "made it very clear" to the firm that the debtors did not wish to retain the firm for "ongoing accounting services" and that the debtors would not seek to have the firm appointed by the court. The debtors further argued that their refusal to sign the letters indicated that they did not wish to employ Wain, Samuel. Moreover, the debtors asserted that the firm's services did not benefit the estate. The debtors submitted not one sworn declaration in support of these assertions. The debtors also claimed that Wain, Samuel's delay in seeking approval should preclude relief.

---

1. Wain, Samuel's invoice dated December 2, 1991 reveals that the preparation of the letters took place in November. That invoice details fees incurred in November for "[n]umerous discussions with bankruptcy attorney, tax attorney, and your attorney about collection of our fees; preparation of engagement letters on advise [sic] of these attorneys."

The bankruptcy court found that "exceptional circumstances" existed to approve retroactively the bulk of Wain, Samuel's services. In particular, the court found that Wain, Samuel's work on the IRS litigation project was performed very quickly in an emergency setting, and that the firm's work benefitted the estate by helping to reduce the IRS' claim from over $200,000 to $85,000. The court also found that Atkins represented to the firm that he would secure the court's approval and never made it clear to the firm that he did not want their services. The court did not find the timing of the motion to be significant under the circumstances. In considering the other equities involved in the case, the court noted that the debtors were solvent, that no creditors had objected, and that Atkins' failure to cooperate with professionals had interfered with the resolution of the Chapter 11 case. The court concluded that the debtors would receive a "windfall" should they prevail. Accordingly, the court awarded the firm $13,475 for the services it found had been rendered on an emergency basis during the period from June 1 through August 31, 1991. The court distinguished the services performed subsequent to August 31 and disallowed fees for those services; it found that those services were not directly related to the tax claim and were therefore not emergency services.

The Bankruptcy Appellate Panel ("BAP") of this circuit affirmed. Applying this court's decision in *Okamoto v. THC Fin. Corp. (In re THC Fin. Corp.)*, 837 F.2d 389 (9th Cir. 1988), the BAP affirmed on the grounds that Wain, Samuel had proffered a satisfactory explanation for its failure to obtain pre-employment approval and had demonstrated that its services significantly benefitted the estate. The BAP noted that the debtors had submitted no evidence to support their posi-

tion and observed the debtors appear to have deceived the firm into believing that they would obtain court approval.

The debtors timely appealed. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d).

## II.

■ We review decisions of the BAP de novo. *Steelcase, Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 326 (9th Cir.1994). A bankruptcy court's entry of a *nunc pro tunc* approval is reviewed for abuse of discretion or erroneous application of the law. *See In re Kroeger Properties & Dev., Inc.*, 57 B.R. 821, 822 (9th Cir. BAP 1986). Accordingly, we will not reverse the bankruptcy court unless we have a " 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached....' " *DaRonde v. Shirley (In re Shirley)*, 134 B.R. 940, 943 (9th Cir. BAP 1992) (quoting *In re Tong Seae (U.S.A.), Inc.*, 81 B.R. 593, 597 (9th Cir. BAP 1988)).

## III.

### A.

■ In bankruptcy proceedings, professionals who perform services for a debtor in possession cannot recover fees for services rendered to the estate unless those services have been previously authorized by a court order. *See* 11 U.S.C. § 327(a);[2] Fed. R.Bank.P. 2014(a);[3] *see, e.g., McCutchen, Doyle, Brown & Enersen v. Official Comm. of Unsecured Creditors (In re Weibel, Inc.)*, 176 B.R. 209, 211 (9th Cir. BAP 1994) (citation omitted). The bankruptcy courts in this circuit possess the equitable power to approve retroactively a professional's valuable but unauthorized services. *See Halperin v.*

---

**2.** 11 U.S.C. § 327(a) provides:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Section 327 also governs the employment of a professional person by a debtor in possession. *See* 11 U.S.C. § 1107(a).

**3.** Bankruptcy Rule 2014(a) provides:

An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professional persons pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee....

*Occidental Fin. Group, Inc. (In re Occidental Fin. Group, Inc.)*, 40 F.3d 1059, 1062 (9th Cir.1994); *In re THC Fin. Corp.*, 837 F.2d at 392. We have held that such retroactive approval should be limited to situations in which "exceptional circumstances" exist. *In re Occidental Fin. Group, Inc.*, 40 F.3d at 1062; *In re THC Fin. Corp.*, 837 F.2d at 392.

■ To establish the presence of exceptional circumstances, professionals seeking retroactive approval must satisfy two requirements: they must (1) satisfactorily explain their failure to receive prior judicial approval; and (2) demonstrate that their services benefitted the bankrupt estate in a significant manner. *In re Occidental Fin. Group, Inc.*, 40 F.3d at 1062 (finding retroactive approval inappropriate where these two conditions were not met); *In re THC Fin. Corp.*, 837 F.2d at 392 (affirming denial of retroactive approval where these two conditions were not satisfied) (citations omitted). Whether additional factors should or must be considered is contested in this appeal.

The parties disagree over what factors a lower court must consider in evaluating whether to approve retroactively the employment of a professional. In *In re Twinton Properties Partnership*, 27 B.R. 817, 819–20 (Bankr.M.D.Tenn.1983), the bankruptcy court set forth nine conditions that it held must be met before a *nunc pro tunc* application may be granted:

1. The debtor, trustee or committee expressly contracted with the professional person to perform the services which were thereafter rendered;

2. The party for whom the work was performed approves the entry of the *nunc pro tunc* order;

3. The applicant has provided notice of the application to creditors and parties in interest and has provided an opportunity for filing objections;

4. No creditor or party in interest offers reasonable objection to the entry of the *nunc pro tunc* order;

5. The professional satisfied all the criteria for employment pursuant to 11 U.S.C.A. § 327 (West 1979) and Rule 215 [now Rule 2014] of the Federal Rules of Bankruptcy Procedure at or before the time services were actually commenced and remained qualified during the period for which services were provided;

6. The work was performed properly, efficiently, and to a high standard of quality;

7. No actual or potential prejudice will inure to the estate or other parties in interest;

8. The applicant's failure to seek pre-employment approval is satisfactorily explained; and

9. The applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the employment of professionals.

*Id.* These factors, among others,[4] have been cited with approval by the Ninth Circuit BAP. *See, e.g., Credit Alliance Corp. v. Boies (In re Crook)*, 79 B.R. 475, 478 (9th Cir. BAP 1987); *In re Crest Mirror & Door Co.*, 57 B.R. at 832; *In re Kroeger Properties & Dev., Inc.*, 57 B.R. at 823.

The parties debate whether these conditions are mandatory or permissive within this circuit. The debtors contend that bankruptcy courts are *required* to balance all of the nine factors set forth in *Twinton Properties* and that *nunc pro tunc* approval may only be granted when each of those factors is pres-

---

**4.** In *In re Crest Mirror & Door Co.*, 57 B.R. 830 (9th Cir. BAP 1986) (per curiam), the BAP cited with approval the factors set forth in *Twinton Properties* as well as the test of *In re Freehold Music Ctr., Inc.*, 49 B.R. 293, 296 (Bankr.D.N.J. 1985). The latter test provides:

The rule which must be applied ... is one in which the Court *balances the equities* and exercises its discretion. It must weigh the good faith of the professional in proceeding without an order and take into account the response to information that the order has not been en-

tered. It must further determine the emergent need for the services rendered and whether need for the services rendered [sic] and whether or not the debtors could have functioned without such services. Other factors for consideration include a determination of whose responsibility it was to obtain authorization, the applicant's relationship with the debtors and his own sophistication in the field.

*In re Crest Mirror & Door Co.*, 57 B.R. at 832–33 (quoting *In re Freehold Music Ctr. Inc.*, 49 B.R. at 296).

ent. Accordingly, the debtors argue, the BAP erred in looking only to whether the firm's services significantly benefitted the estate and whether the firm sufficiently explained its failure to secure pre-employment approval. The debtors maintain that this panel must reverse the bankruptcy court's *nunc pro tunc* approval because not all of the *Twinton Properties* conditions are met. Wain, Samuel responds that the *Twinton Properties* test is no longer valid in light of this court's decision in *THC Financial*, 837 F.2d at 389, which applied only two of the *Twinton Properties* conditions. Wain, Samuel further argues that even if *Twinton Properties* applies in its entirety, the test is met.

Although the *Twinton Properties* factors have been cited with approval within this circuit, these factors have been cited in a permissive, rather than mandatory, fashion. The BAP has consistently suggested that *Twinton Properties* is the *kind* of analysis that may be applied, but has never dictated that every factor set forth in that opinion must be considered or met. *See In re Crook*, 79 B.R. at 478 (noting that the *Twinton Properties* factors are merely "factors which *may be used* by the trial court to guide its decision.") (emphasis added); *In re Kroeger Properties & Dev., Inc.*, 57 B.R. at 823 (advising that the trial court should conduct an analysis *"such as* that found in" *Twinton*

*Properties*) (emphasis added); *In re Crest Mirror & Door, Co.*, 57 B.R. at 832–33 (observing that in *Kroeger* the court "suggest[ed]" the analysis set forth in *Twinton Properties*) (per curiam).[5] Indeed, the BAP has specifically observed that the *Twinton Properties* factors are "not a litmus test." *In re Crook*, 79 B.R. at 478; *see also In re Laguna Hills Fin. Assocs.*, 93 B.R. 224, 226 (Bankr.C.D.Cal.1988) (concluding that "[s]atisfaction of the nine so called '*Twinton Properties* conditions' is not a prerequisite to trial court approval" of a *nunc pro tunc* application), *aff'd*, 125 B.R. 57 (9th Cir. BAP 1989) (unpublished disposition).[6]

■ It is not required that every condition enumerated in *Twinton Properties* be considered or met for the bankruptcy court to properly grant a *nunc pro tunc* approval of professional employment. This court has highlighted variations of two of the conditions:

> [S]uch awards should be limited to exceptional circumstances where an applicant can show both a satisfactory explanation for the failure to receive prior judicial approval and that he or she has benefited the bankrupt estate in some significant manner. *See [In re ] Triangle Chemicals*, 697 F.2d [1280] at 1289 [ (1983) ] (all requiring

---

5. There are two bankruptcy court decisions within this circuit which have held to the contrary and state that each of the *Twinton Properties* factors must be satisfied in order for a retroactive approval to be granted. *See In re Willamette Timber Sys., Inc.*, 54 B.R. 485, 488–89 (Bankr. D.Or.1985) (adopting the *Twinton Properties* criteria "each of which the applicant must demonstrate" and denying the application for retroactive approval because the applicant did not satisfactorily explain his failure to seek pre-employment approval); *In re McKinney Ranch Assocs.*, 62 B.R. 249, 252, 255–56 (Bankr.C.D.Cal.1986) (holding that applicant must demonstrate compliance with the nine *Twinton Properties* conditions and denying approval where applicant attorney was disqualified from appointment due to potential conflict of interest with estate). These opinions must be read in the light of the subsequent precedent discussed above.

6. Atkins cites to *In re Kroeger Properties & Development, Inc.*, 57 B.R. at 821, in support of his argument. However, Atkins misreads that case. In *Kroeger*, the bankruptcy court had denied an

application for *nunc pro tunc* approval. In deference to the bankruptcy court's discretion in such matters, the BAP held that it would not even question the trial court's *denial* of a retroactive award unless all of the *Twinton* factors are met: "Only when an attorney has satisfied these relevant considerations will the Panel question the trial court's exercise of its virtually unfettered discretion in dealing with such applications." 57 B.R. at 823. It is illogical to glean from this language a requirement that all of the *Twinton Properties* conditions must be met in order for a bankruptcy court to be permitted to *grant* a retroactive approval. Not only does *Kroeger* not so hold, but the opinion also emphasizes the bankruptcy court's discretion in such matters. Moreover, the *Kroeger* court *suggests* the *Twinton Properties* test as an example of the kind of analysis that should be employed: "In determining the appropriateness of a *nunc pro tunc* application, the trial court should conduct an analysis *such as* that found in" *Twinton Properties*. *Id.* We adopt from *Kroeger* no mandatory rule requiring compliance with all of the *Twinton Properties* factors either for the purposes of the trial court or the appellate courts.

a benefit to the estate); *In re Twinton Properties Partnership*, 27 B.R. 817, 819–20 (Bankr.M.D.Tenn.1983) (using these criteria among others to justify a retroactive award); *In re Orchid Island Hotels, Inc.*, 18 B.R. 926, 933 (Bankr.D.Haw.1982); and [*In re*] *Holiday Mart*, 18 B.R. [212] at 216. [ (Bkrtcy.D.Hawai'i) ].

*In re THC Fin. Corp.*, 837 F.2d at 392; *see also In re Occidental Fin. Group, Inc.*, 40 F.3d at 1062.

Wain, Samuel essentially contends that after *THC Financial* the other *Twinton Properties* conditions should not be considered at all. We disagree with this interpretation of *THC Financial*. Although *THC Financial* places limits on the trial court's discretion in granting *nunc pro tunc* applications, this court did not unambiguously reject the *Twinton Properties* test. Rather, the court elevated in importance variations of two of the test's requirements by holding that where those requirements are not met, bankruptcy courts should not grant retroactive approval. *In re THC Fin. Corp.*, 837 F.2d at 392. Because the applicant in *THC Financial* failed to satisfactorily explain his failure to seek pre-employment approval and could not demonstrate that his services benefitted the estate in a significant manner, this court affirmed the bankruptcy court's denial of his application. Similarly, in *In re Occidental Financial Group, Inc.*, 40 F.3d at 1062–63, this court affirmed the denial of a *nunc pro tunc* application where those two key conditions were absent. This court had no occasion to address the other *Twinton Properties* factors in either *THC Financial* or *Occidental Financial*.

We address that issue now. We conclude that the two requirements of *THC Financial* must be met in order for a professional to establish "exceptional circumstances." Moreover, the professional must have satisfied the criteria for employment pursuant to 11 U.S.C. § 327, other than the usual requirement of pre-employment approval. The

other factors set forth in *Twinton Properties* may be, but need not be, considered by the court in exercising its discretion.

**B.**

 Applying these standards to the case at bar, we find that the trial court committed no error in granting Wain, Samuel's *nunc pro tunc* application.

1. Satisfactory Explanation

The bankruptcy court found that Wain, Samuel offered a satisfactory explanation for its failure to secure prior judicial approval of its engagement because the firm's work during June, July, and August of 1991 was performed on an emergency basis. It also excused the firm's failure to seek pre-employment approval because it found the debtors led the firm to believe that they would secure the requisite court approval.

The bankruptcy court found that Wain, Samuel's services in assisting the debtors in litigating against the IRS were rendered in an emergency setting. The court found that the services related to the same urgent subject matter and were performed on an intensive basis during a three-month period. The court was careful to distinguish, and to disallow payment for, services which it determined were not performed on an emergency basis.

The debtors admit that they initially engaged Wain, Samuel's services on an emergency basis, as they urgently needed help in responding to the IRS interrogatories,[7] but claim that the emergency project comprised only the draft interrogatories which the firm completed by early June. It is undisputed that Wain, Samuel was promptly paid for the work to which the debtors refer. The debtors have failed to come forward with any evidence to support their position. Wain, Samuel's services subsequent to June 7 were, as the bankruptcy court found, directly relat-

---

7. The debtors admitted:

[T]he accountants involved in this case came at a critical juncture for the Debtors. The Debtors were in need of immediate and critical assistance; the IRS was claiming approximately $200,000 in taxes, interest and penalties.

The debtors were advised [that if] the requested information was not complied and supplied to the IRS within two to three weeks ... the IRS would be able to obtain summary judgment.

ed to the same urgent subject matter. Over the next two and one-half months, on Whitley's request, Wain, Samuel elaborated on its interrogatory responses, went over its responses with Whitley to prepare him to take key depositions, and met with the U.S. Attorney to discuss the tax litigation. It was not error for the bankruptcy court to find that the debtors urgently needed Wain, Samuel's assistance and that these tasks were undertaken on an emergency basis.

In addition, the bankruptcy court essentially found that Wain, Samuel reasonably relied upon the debtors' repeated representations that they would secure the court's approval. Contrary to the debtors' assertion in their brief, the bankruptcy court found that Atkins misled the firm: he "represented that he would take care of the application to the Court" and "never told the applicant clearly . . . you aren't representing me . . . ."

The debtors fail to successfully challenge Setzen's declaration, credited by the trial court, that the debtors repeatedly assured the firm that they would seek the court's approval and that the firm would be paid for its services. Setzen asserts:

> Throughout this process, we endeavored to have our appointment confirmed by the Court. We made repeated and continual requests of Mr. Atkins and Mr. Bassell, who repeatedly assured us that we would be officially appointed and our fees paid.

In fact, the debtors have admitted that they promised the firm both that they would have the firm officially appointed and that the debtors would pay the firm for its services. Before the bankruptcy court, the debtors argued that although they promised the firm that it would be paid, they were referring only to the "initial work" performed in drafting the interrogatory responses. Wain, Samuel correctly points out that this contention is not sensible and was implicitly rejected by the bankruptcy court. The debtors had already paid Wain, Samuel for what the debtors referred to as the "initial work" and acknowledged that fact in their brief before the bankruptcy court. Thus, the admitted promise to pay can only logically be construed to refer to the remainder of the two and one-half month IRS litigation project.

Although the debtors admit that they promised they would obtain court approval and that they never followed through, they claim that they were only referring to the services for which Wain, Samuel was already paid. It was not erroneous for the bankruptcy judge to credit Setzen's version of the events over the unsworn statements of the debtors.

■ Finally, the debtors claim that even if Wain, Samuel relied upon the debtors' assurances, such reliance was unreasonable because the debtors' refusal to sign the letters prepared at their bankruptcy attorney's request sent a "clear" message that they no longer wished to employ the firm. However, the record reveals that those letters were prepared in November of 1991, well after Wain, Samuel had completed its work on the IRS project. And even after the debtors refused to sign the letters, they continued to assure Setzen that the firm would be paid. Even assuming that this refusal to sign the letters sent a "message," the message was sent only after Wain, Samuel had completed its work on the IRS project and in the context of continuing assurances.[8]

8. The debtors vigorously argue that the timing of the firm's motion for retroactive approval precludes the firm from obtaining retroactive appointment. They argue that even if the firm rendered its services in June, July and August in an emergency setting, that emergency does not justify its waiting to file for retroactive approval until August of the following year. The debtors cite no authority which would disentitle Wain, Samuel to *nunc pro tunc* relief. As is examined above, in order to establish the exceptional circumstances which entitle a professional to retroactive appointment, the professional must satisfactorily explain his or her failure to seek pre-employment approval. For two and one-half months, Wain, Samuel performed services without court approval, but has satisfactorily explained its failure to seek court approval.

That Wain, Samuel did not file an application for retroactive approval immediately thereafter does not preclude the granting of the application under these circumstances. The delay which is of greatest significance is an applicant's delay in seeking approval while it continues to render services to the estate. *See, e.g., In re Crook,* 79 B.R. at 478–79 (denying retroactive approval where attorney gave no satisfactory explanation for his failure to seek court approval and had

**978**

We agree that the emergency nature of the services, coupled with the firm's reasonable reliance on the debtors' representations that they would obtain court approval, constitute a satisfactory explanation for Wain, Samuel's failure to obtain pre-employment court approval. The record amply supports the bankruptcy court's findings on this issue.

2. Benefit to the Estate

Before the bankruptcy court, the debtors claimed that their tax attorney, Mr. Whitley, was solely responsible for the IRS' reduction of its claim from over $200,000 to $85,000 and that Wain, Samuel's services did not benefit the estate. The bankruptcy court rejected that argument and found that Wain, Samuel's services contributed to the reduction of the tax claim and therefore benefitted the estate. In their appeal to this court, the debtors assert that all of the bankruptcy court's conclusions were incorrect, but offer no argument directed to the issue of benefit to the estate.

The record reveals that Wain, Samuel promptly responded to the debtors' urgent need for services, that the IRS expressed willingness to concede some of the items it was claiming on the basis of information that Wain, Samuel had prepared and provided, and that the IRS did, in fact, reduce by over half the amount of money it was seeking from the debtors. The bankruptcy court did not err in crediting Stezen's declaration that "had we not completed our required and requested work, and instead abandoned our

client, these savings would not have been obtained." The record supports the conclusion that Wain, Samuel's services significantly benefitted the estate by aiding in the preservation of the estate's assets. *See Larson v. United States Trustee (In re Larson)*, 174 B.R. 797, 802 (9th Cir. BAP 1994).

3. Other factors

As previously discussed, we have never required applicants to meet all of the *Twinton Properties* conditions in order to obtain retroactive employment approval. Today, we hold that the bankruptcy court may grant a *nunc pro tunc* approval over the objection of the debtor in possession. We also hold that the bankruptcy court was entitled, but not required, to consider other *Twinton Properties* factors in making its decision.

Here, several of the considerations set forth in *Twinton Properties* buttress the bankruptcy court's conclusion. The bankruptcy court found it to be significant that the debtors are solvent and the creditors have been paid in full. No creditors had offered reasonable objections to the application. No creditors have complained about noncompliance with 11 U.S.C. § 327 or Rule 2014. There have been no challenges to the firm's disinterestedness and no disqualifying conflicts of interest which would violate § 327. In light of these considerations, the bankruptcy court concluded correctly that the debtors would receive a windfall if they prevailed.[9]

waited nine months after being informed that his employment was not authorized, yet continued to render services to the estate). Although Wain, Samuel filed its *nunc pro tunc* motion in August, 1992, with the exception of some minor tasks, the services for which the firm seeks approval were completed by August, 1991.

The debtors cite several cases which hold "mere negligence or inadvertence" to be an unsatisfactory explanation for failure to obtain pre-employment approval. *In re Shirley*, 134 B.R. at 943–44 n. 4; *Andrew v. Coopersmith (In re Downtown Inv. Club III)*, 89 B.R. 59, 63 (9th Cir. BAP 1988); *In re Crook*, 79 B.R. at 479; *In re Kroeger Properties & Dev., Inc.*, 57 B.R. at 823. These cases do not support the debtors' argument. Wain, Samuel has established a satisfactory explanation for its failure to seek prior court approval.

9. The bankruptcy court also noted that the debtors' failure to cooperate with the professionals

involved in the Chapter 11 proceedings interfered with the orderly disposition of the case. The debtors argue that the bankruptcy court sought to "punish a solvent debtor" and that their inability to cooperate with the professionals is an improper factor to consider. From the record, it is evident that this failure to cooperate was only one of several factors that the bankruptcy court considered in rendering its decision. It is unclear to what the bankruptcy court was referring. The debtors dealings with Wain, Samuel evince an inability to cooperate with professionals; perhaps this is the failure to cooperate which the court addresses. Nonetheless, we need not decide whether the bankruptcy court should or should not have considered the debtors' failure to cooperate as an independent factor because the bankruptcy court provided ample support for its decision.

## IV.

The bankruptcy court did not abuse its discretion in granting Wain, Samuel's motion for *nunc pro tunc* approval of its employment as Wain, Samuel established the existence of exceptional circumstances. The decision of the BAP upholding the bankruptcy court order is therefore **AFFIRMED**.